Filed January 5, 1893.

---

No. 16,579.

## MUSGRAVE *v.* THE STATE.

CRIMINAL LAW. — *Criminal Conspiracy.* — *Indictment.* — *Sufficiency of.* — *Surplusage.* — *Motion to Quash.* — An indictment which charges a public offense with reasonable certainty is good, although the offense may not be charged with strict formality, and there may be surplusage in the indictment, and defects that do not affect the substantial rights of the defendant are not sufficient to authorize the quashing of the indictment or information. For the indictment, see opinion.

SAME. — *False Pretense.* — *May Consist of Acts.* — Acts, as well as words, may constitute a false pretense in the meaning of the law.

SAME. — *Criminal Conspiracy to Defraud Life Insurance Company.* — *Insurance Policy.* — *Need Not Be Incorporated in Indictment.* — In an indictment charging a criminal conspiracy to defraud a life insurance company by endeavoring to make it to be believed and understood that the assured had been burned to death, and thereby attempting to induce the beneficiary of the assured to recover the amount of said policy, and the insurance company, on the faith of said false representation, to pay the amount of said policy, it is not necessary to incorporate the policy of insurance in the indictment.

SAME. — *Criminal Conspiracy.* — *Object of Can Not Affect.* — *Gravamen of the Offense.* — In a criminal conspiracy to defraud a life insurance company, it

can make no difference that the immediate and direct object of the conspirators was to obtain money for the beneficiary in the policy, for the *gravamen* of the offense consists in the felonious purpose to defraud another out of money or property.

SAME.—*Criminal Conspiracy.*—*Beneficiary of Life Policy Not a Conspirator.*—*Does Not Affect Guilt of Others.*—In an indictment charging a criminal conspiracy to defraud a life insurance company, it is not necessary to allege that the beneficiary of the policy was one of the conspirators, the allegation that they feloniously designed to deceive her and induce her to make a false claim is sufficient.

SAME.—*Criminal Conspiracy.*—*Involving an Innocent Person.*—*Effect.*—It can not avail a defendant in an action for criminal conspiracy to set up in defense that the success of the wicked scheme depended, in part, on the action of an innocent person.

SAME.—*Criminal Conspiracy.*—*Presumption as to Action of Beneficiary.*—*Intention.*—*Presumption as to.*—In an action for criminal conspiracy to defraud a life insurance company; it is to be presumed that the beneficiary of the life policy will accept the benefit, and proceed to recover the amount of the policy, when she believes it to be due; and it is also presumed that a person intends the natural and legal consequences of his actions.

SAME.—*Criminal Conspiracy.*—*Conspirators' Scheme.*—*Presumption as to Intention of.*—In an action for criminal conspiracy, it is to be presumed that the conspirators acted upon the theory that their scheme would not be discovered, and that their fraudulent plan would be successful; and the fact that they were foiled can be of no benefit to them.

SAME.—*Plea in Abatement.*—*How Construed.*—*Necessary Allegations.*—A plea in abatement must be strictly construed, and, in order to defeat a prosecution, ought, at least, to state the substance of the material allegations of the indictment relied upon as the ground for abating the prosecution.

SAME.—*Instruction to Jury.*—*Demand of Joint Defendants for Separate Trials.*—Where two or more defendants are charged with the same offense in the same indictment, it is not error for the court, in instructing the jury, to inform them that the defendants had demanded separate trials.

SAME.—*Criminal Conspiracy.*—*Instruction to Jury.*—*Life Insurance Policy.*—*Beneficiary's Ignorance of.*—*Effect.*—In an action for criminal conspiracy to defraud a life insurance company, it was error for the court to instruct the jury that the defendant must be acquitted, unless it is made to appear that the beneficiary of the policy knew of the existence of such policy.

SAME.—*Criminal Conspiracy.*—*Evidence.*—*Insurance Policy.*—In an action for criminal conspiracy to defraud a life insurance company, the policy, though not a part of the indictment, is admissible in evidence, for a written instrument may often be competent evidence, and yet not be a necessary part of the pleading.

INSTRUCTIONS TO JURY.—*Exceptions to.*—*Can Not Be Taken in Gross.*—

Musgrave v. The State.

*Failure of Record to Contain All the Instructions.*—Where the record does not show that all the instructions given in the case are in the record, this court can not consider any question on the giving or refusal of instructions; exceptions to instructing can not be taken in gross, but must be taken specifically.

SAME.—*Not Correct in Terms Asked.*—*Refusal to Give.*—*Effect.*—Where an instruction is not correct in the terms in which it is asked, it is not error for the court to refuse to give it, even though the court, had it so elected. might have modified it so as to express the law.

From the Vigo Circuit Court.

*T. F. Donham, G. W. Faris* and *S. R. Hamill,* for appellant.

*M. C. Hamill, J. Jump, J. E. Lamb* and —— *Davis,* for appellee.

ELLIOTT, J.—The charging part of the indictment upon which the appellant was tried and convicted reads as follows:

"That Benjamin R. Musgrave and Charles M. Trout, on the 10th day of August, 1891, at and in the county of Vigo, and State of Indiana, did then and there unlawfully, feloniously and knowingly, unite, combine and conspire, confederate and agree, to and with each other, for the object and purpose, and with the intent to then and there feloniously and knowingly cause it to be generally believed, in said county of Vigo, and by the United States Mutual Accident Association, of the city of New York, a corporation, and by Mrs. Sarah Musgrave, the mother of Benjamin R. Musgrave, that said Benjamin R. Musgrave had thereafter, to wit, on the night of the 23d day of August, 1891, been, by external violence and accidental means, burned to death, and was dead, whereas, in truth and in fact, he had not, as they well knew, been burned to death and was not dead, as thereby feloniously, knowingly, falsely and designedly, and with intent to feloniously cheat, wrong and defraud said United States Mutual Accident Company in money, the property of said association, and of the value of five thou-

sand dollars in money, by inducing false proofs of his death at the time and in the manner aforesaid, and the false pretence and claim that he was dead in such proofs contained, to be procured and made, and with a claim on her part for the said five thousand dollars insurance money, the property of said association, to be presented by said Mrs. Sarah Musgrave, in the belief, on her part, that he was so dead, to said United States Mutual Accident Association, of the city of New York, and thereby, on such false proofs and the false pretence and claim of said Benjamin R. Musgrave's death therein contained, a more particular description of which proofs and claim the grand jurors can not here give and set out, as the form in which such proofs and claim are required to be made are to the grand jurors unknown, to feloniously, willfully, designedly and falsely cause such association to believe him, said Benjamin R. Musgrave, so to have been accidentally burned to death; and in such belief, and in reliance upon the truth of such false proofs, and the false claim and pretense therein contained, and thereby and therewith made, that said Benjamin R. Musgrave had so come to his death, and was dead, to pay to the said Mrs. Sarah Musgrave, and her, by such false proofs, pretense, means and claim to obtain from it, the said United States Mutual Accident Association, of the city of New York, five thousand dollars in money, the property of the said association, and of the value of five thousand dollars in money, upon a policy of insurance, number fifty-five thousand seven hundred and fifty-five, in division "A. A." of said association; theretofore, on the 7th day of August, issued by said association on said Benjamin R. Musgrave, upon application made by him therefor, and signed B. R. Musgrave; and by the terms of which policy that sum of money was made payable by said association to Mrs. Sarah R. Musgrave, as she knew, upon his death having occurred and occurring within ninety days from said August 7, 1891, as a result of external, violent

and accidental means; and did then and there, in pursuance of such feloniously and knowingly uniting, combining, confederating and agreeing together for the purpose aforesaid, and to so falsely, feloniously, knowingly, willfully and designedly cause it to be believed for the willful, unlawful, false and felonious purpose of cheating, wronging and defrauding said United States Mutual Accident Association aforesaid, that said Benjamin R. Musgrave had been accidentally burned to death, and a false proof aforesaid to that effect, and the claim aforesaid to be procured, made and presented by said Mrs. Sarah R. Musgrave, and the false pretense of his death aforesaid in such proof and claim to be made to said United States Mutual Accident Association contained, to be relied upon by it, said association, and thereby with the intent, on the part of said Benjamin R. Musgrave and Charles M. Trout, to willfully, designedly and feloniously cheat, wrong and defraud said association, and cause it, said association, to, in such reliance, pay to said Sarah Musgrave, and her to procure from it, said association, said sum of five thousand dollars in money, the property of said association, and of the value of five thousand dollars in money, feloniously, knowingly and designedly procured the skeleton and bones of a dead human being and placed the same in an old house, in said county of Vigo, Indiana, in which house said Benjamin R. Musgrave was, on the said 23d day of August, 1891, temporarily staying; and on the night of said day, in pursuance of such feloniously, knowingly, uniting, combining, conspiring, confederating and agreeing together, as aforesaid, with the false, willfull, designed and felonious intent to cheat, wrong and defraud said United States Mutual Accident Association, as aforesaid, in the way and manner aforesaid, caused said house, with the bones and skeleton in it, to be burned down and destroyed by fire, so that part of the bones and skeleton might be found in the ashes of said house, as was soon after on the next day done, and

thereby to cause it to be generally believed in the said county of Vigo, Indiana, and by the said United States Mutual Accident Association aforesaid, and said Mrs. Sarah Musgrave, that said Benjamin R. Musgrave had been accidentally burned to death, and was dead, and that such parts of said bones and skeleton which might be, and were, so found, were parts of his, said Benjamin R. Musgrave's bones, while said Benjamin R. Musgrave should, as he did, in pursuance of such feloniously and knowingly entering into conspiracy, combination, confederation and agreement, flee on the night of said 23d day of August, 1891, from the State of Indiana, assume a disguise and a different name, and for a long time keep himself away from the State of Indiana, which he continued to do, and to assume a false name until arrested at St. Paul, in the State of Minnesota, during the first week of November, 1891, and brought back and placed in the jail of Vigo county, Indiana; whereas, in truth and in fact, they, said Benjamin R. Musgrave and Charles M. Trout, well knew that each and all such pretenses, acts and conduct of the said Benjamin R. Musgrave and Charles M. Trout, herein above set out, and so willfully, feloniously, knowingly and designedly done and made, as aforesaid, with the intent to cheat, wrong and defraud said United States Mutual Accident Association out of the sum of five thousand dollars in money, the property of said association, of the value of five thousand dollars, would be and were feloniously, willfully, knowingly and designedly false, and such proofs and claim of his death so to be procured, made and presented, and the pretenses of his death therein contained and thereby to be made by said Mrs. Sarah Musgrave to said United States Mutual Accident Association for the purpose of procuring of and obtaining from it said sum of five thousand dollars in money, on the insurance policy aforesaid, would all, in truth and in fact, be false, but all of which would have been, by Mrs. Sarah Musgrave, to wit, said false proofs of

his, said Benjamin R. Musgrave's death, in the way and manner, and at the time aforesaid, and the claim that he was dead, therein contained, and the claim aforesaid for five thousand dollars in money, under the policy aforesaid, said policy would have been presented to said association by her for the purpose aforesaid, but for the fact that it soon became known and understood in said Vigo county, Indiana, and to said United States Mutual Accident Association, and said Sarah Musgrave, that Benjamin R. Musgrave had not been so burned to death, and was not dead; and that all the acts and things done by said Benjamin R. Musgrave and Charles M. Trout were false and felonious, and were done with the intent to falsely, designedly, willfully and purposely defraud and cheat said United States Mutual Accident Association out of said sum of five thousand dollars in money, the property of said association, and of the value of five thousand dollars in money, as aforesaid."

We have copied the indictment for the reason that the questions discussed by counsel in arguing the specification in the assignment of errors, assailing the indictment, can not be properly understood from a mere synopsis of that pleading. An additional reason for copying the unnecessarily prolix and confused pleading is that it gives a general outline of the whole case and opens the way to a consideration of the questions argued by counsel, arising upon other rulings. The indictment is justly subject to verbal criticism, for it is overladen with useless matter and lacks the virtues of perspicuity; but such defects supply no ground for sustaining a motion to quash, and certainly no reason for declaring an indictment bad when assailed for the first time on appeal; for, if the material elements of a crime are charged, surplusage will not vitiate the indictment, nor will lack of clearness render it bad. It is proper to say that the crime the indictment describes is one of a

complex and intricate nature, and the work of preparing an indictment one of much difficulty.

The rule prescribed by our statute governing the question of the sufficiency of indictments is a reasonable one, and the courts of the State have given it a just and liberal construction. That rule, roughly outlined, is this: An indictment which charges a public offense with reasonable certainty is good, although the offense may not be charged with strict formality, and there may be surplusage in the indictment. *Hobbs* v. *State*, 133 Ind. 404; *State* v. *White*, 129 Ind. 153; *Fisher* v. *State*, 2 Ind. App. 365; *State* v. *McDonald*, 106 Ind. 233; *Myers* v. *State*, 101 Ind. 379; *Feigel* v. *State*, 85 Ind. 580; *State* v. *Judy*, 60 Ind. 138; *Delano* v. *State*, 66 Ind. 348; *Quinn* v. *State*, 35 Ind. 485. Other courts hold the same general doctrine. *State* v. *Van Doran*, 109 N. C. 864, S. C., 14 S. E. Rep. 32; *State* v. *Williams*, 32 S. C. 123; *People* v. *Quinn*, 63 Hun, 634; *State* v. *Shaw*, 22 Ore. 287. Defects that do not affect the substantial rights of the defendant are not sufficient to require the quashing of an indictment or information. *Billings* v. *State*, 107 Ind. 54; *Woodward* v. *State*, 103 Ind. 127. An indictment that fairly informs the accused of the offense charged against him and enables the court to pronounce judgment according to the right of the case is sufficient. *Woodward* v. *State, supra; State* v. *Shaw, supra.* The authorities to which we have referred make it our duty to sustain the indictment, unless we find in it defects affecting the substantial rights of the defendant. Such defects, as we have already indicated, can not exist if the indictment contains sufficient substantial allegations expressed with reasonable certainty to apprise the accused of the offense charged against him, and enable the court to give the judgment required by law. It is quite well settled that questions may be presented by a motion to quash, that are unavailing on appeal, where the first attack on the indictment is made in the specification in the assignment of

errors. See authorities cited, Elliott's Appellate Procedure, section 488. We shall not strictly apply this rule, but will deal with the indictment substantially as if there had been a motion to quash, seasonably filed.

It is very clear to us that the conspiracy, and the objects, purposes and intentions of the conspirators, are sufficiently charged. It plainly appears, from the language employed in the indictment, that the object of the conspirators was to obtain, by false and fraudulent pretenses, the amount of the insurance written upon the life of Musgrave. The intention of the conspirators was, as the indictment sufficiently alleges, to cause a false claim to be presented to the insurance company, and to cause it to be supported by false proof. The purpose is plainly shown, and that purpose was to defraud the insurance company and procure it to pay five thousand dollars, by inducing it to believe that Musgrave had been burned to death. The scheme of the conspirators clearly appears, and no one can doubt that it was criminal in its inception, criminal in all its purposes, and criminal in the means employed by the conspirators to make their plans effective. Their purpose was to defraud the insurance company, their agreement was formed to accomplish that object, and their acts were done pursuant to their felonious agreement and purpose. There is the element of confederation, the element of wicked intention, the element of purpose to defraud a person of money, the element of positive acts performed in furtherance of the conspiracy, and the element of pretenses willfully false and fraudulent. We are unable to perceive that any element of crime is absent, for the averments of the indictment show the presence of all the essential ingredients of a felony.

We agree with appellant's counsel that it is necessary, in such a case as this, to describe the particular felony which the conspirators confederated to commit; and we do not

deny the validity of their conclusion that the particular felony which it was the purpose of the conspirators to commit must be sufficiently charged. *Smith* v. *State*, 93 Ind. 67; *Landringham* v. *State*, 49 Ind. 186; *State* v. *McKinstry*, 50 Ind. 465; *United States* v. *Cruikshank*, 92 U. S. 542. But the concession that the law is as counsel state it does their client no good, for the indictment does sufficiently charge the particular felony the conspirators confederated together for the purpose of committing. It clearly appears that their pretense that Musgrave was burned to death was false, that it was known to be false, that the purpose in making the pretense was fraudulent, and that the design was to secure the money of the insurance company upon a foundationless claim.

The false pretense which the conspirators made was not to secure a policy of insurance, but to secure money upon a policy which had been issued, and to effect this object they employed means well adapted to deceive. They did many acts in furtherance of their felonious design, and acts, as well as words, constitute a false pretense within the meaning of the law. Where acts exist words are not needed.

It was not necessary to incorporate the policy of insurance in the indictment. No offense making it necessary to set forth the policy was charged or attempted to be charged. The money it was that the conspirators desired, and to obtain the money, they formed their evil scheme and made their false pretenses. The policy was merely an incidental or collateral matter, valuable as evidence of a contract and as an incidental matter showing that the pretense was such as was likely to deceive, and would probably deceive, but not the foundation or support of the indictment. In what are known as the " Star Route Cases," counsel contended that instruments executed and employed by the members of a conspiracy to effect their purpose should be set forth in the indictment, but the court

decided otherwise. Wright on Criminal Conspiracy, 207. Here the question is much less embarrassed by doubt than was the question in the case to which we have referred, for here the policy of insurance was not directly employed by the conspirators; on the contrary, it was an instrument executed by the artificial person the conspirators designed to defraud, and was executed to the beneficiary therein designated.

It can make no difference that the direct and immediate object of the conspirators was to obtain money for the beneficiary in the policy, for the *gravamen* of the offense consists in the felonious purpose to defraud another out of money or property. It would avail a thief nothing to aver that he stole property for his mother, and no more can it avail the accused to aver that he made the false pretense of his death to secure a benefit to his mother. The object of the statute is to protect persons from being defrauded by false pretenses, and to punish those who attempt to se-cure money or property by such pretenses, or who do so secure it. If the false pretenses of the wrong-doer are such as to deprive the person from whom the money is procured of his money, then money is obtained by false pretenses, and a crime is committed. If, in other words, the wrong-doer does make such false pretenses as induces another to part with his money or property, that money or property is obtained from the owner by false pretenses, because he is deprived of it by criminal means and methods. The law does not make it an element of the offense of obtaining money or property under false pretenses that it shall be obtained for the person making the pretenses himself, or that it shall be intended to obtain it for an-other, for it is provided that "whoever shall obtain money or property" by false pretenses shall be guilty of a felony.

We do not think the indictment is bad because it does not aver that Mrs. Musgrave was one of the conspirators. The allegation that the conspirators feloniously designed

to deceive her and procure her to make a false claim is sufficient to show that the design of the conspiracy was such as might well be accomplished without her participation in any wrong. It ought not to be held, unless an imperative statute makes it necessary, that where conspirators seek to make an innocent person an instrument in effecting a crime deliberately resolved upon by them, that they are to be held guiltless, since such a holding would open an easy road for the escape of guilty men. We are not inclined to assent to the broad doctrine declared in the case *In re Schurman*, 40 Kan. 533; but if we should adopt the doctrine there stated, we could not regard that case as in point. There was no allegation in the indictment in that case that the conspirators intended to deceive the beneficiary in the policy and induce her to present a claim and make proof against the company, while here there are such allegations as make it evident that the conspirators intended to use the beneficiary in effecting their criminal design; and there are, also, allegations making it clear that there was a probability that she would become their instrument, innocently, it is true, but, nevertheless, their instrument. If the scheme and the fraudulent acts of the accused and his confederate performed in their efforts to make it successful had remained undiscovered, it is quite as probable as anything can well be that the claim of the beneficiary would have been presented, for it was but natural that she should seek the benefit the policy provided for her, and, this being true, it can not be that a guilty conspirator can use the discovery of his crime as a shield against deserved punishment, or that he can evade the law by averring that one person upon whom depended, in part, the success of his scheme was free from guilty knowledge.

Two elementary propositions exert an important influence upon the branch of the case under immediate mention. The first, but perhaps not the most important, is

this: persons are presumed to do what secures them benefit. It is a rule of common sense, as well as of law, that men's actions are influenced by their interest. It is upon this familiar rule that a grantee is presumed to accept a deed, or a donee to accept a gift; but it is unnecessary to gather illustrations, for the rule is a very familiar one. Lawson's Presumptive Evidence, 302. In this instance the presumption is that the beneficiary would have enforced the policy and secured a benefit by receiving no inconsiderable sum, if the scheme of the confederates in crime had succeeded. Of this rule the accused must have known, not only because he was bound to know the law, but, also, because the presumption is such a natural and reasonable one that all persons act with reference to it. But, as we have seen, the matter is not left to presumption, for facts are alleged showing that the conspirators intended that their scheme should succeed, and believed that it would be entirely successful.

The second rule is this, "A man is presumed to intend the natural and legal consequences of his act." This well known rule is influential here, as it almost always is, on the side of right, for it is right that one who deliberately enters into a conspiracy with the intention of defrauding another of a large sum of money should be presumed to intend that the natural and legal consequences of his act will result. We have seen what the natural consequences of his act were, and it needs but a bare statement that the legal consequences, if no discovery had been made, would have been heavy loss to the insurance company and corresponding gain to the beneficiary. This the facts averred in the indictment show, and this the law presumes. The principle we have stated is illustrated by many cases. *Chase* v. *Chase*, 6 Gray, 157; *Evans* v. *Evans*, 41 Cal. 103; *Holmes* v. *Holmes, etc., Mfg. Co.*, 37 Conn. 278; see, also, cases cited, 1 Bishop's Crim. L. (8th ed.), section 734.

The accused must be deemed to have acted upon the pre-

sumption that his fraudulent scheme would not be discovered, for any other presumption would be exceedingly violent and unnatural. To permit him to deny that he did so act would be a perversion of justice and a violation of all principle. It is, indeed, practically inconceivable that he acted upon the assumption that his plans would be brought to light and thwarted, so that the fact that they were foiled can not be of benefit to him. It was not what he expected that frustrated his fraudulent purpose, but it was what was to him entirely unexpected that brought about that result. It can not avail him now to aver that his scheme was not successful, for it was not through any merit or expectation of his that it failed. The facts stated in the indictment are amply sufficient to authorize the inference, as a matter of law, that the purpose of the accused was one very likely to be accomplished, so that it can not be said that there was such remoteness or such lack of probability that the intended consequences would result as renders the indictment bad, even upon the concession that such defects could, in any case, render an indictment insufficient.

A plea in abatement was filed by the appellant, containing these material allegations: That on the 30th day of October, 1891, the grand jury of Vigo county returned an indictment against him and one Charles M. Trout "for conspiracy to defraud an underwriter"; that on the 31st day of October, 1891, the governor of Indiana, by requisition, demanded of the governor of the State of Minnesota that the defendant be delivered up to be removed from the State of Minnesota to Indiana; that James U. Stout was appointed an agent for the State last named; that defendant was arrested at St. Paul, Minnesota, and brought back to Indiana; that ever since the defendant was received into custody by Stout he has been, and now is, in the jail of Vigo county, to answer the charge in the indictment mentioned; that he is ready to answer the charge

on which he was so extradited; that he came to Indiana to answer the charge in that indictment and no other, and is ready " in this behalf to put himself upon the country "; that at the time the indictment mentioned was returned he was domiciled in the city of St. Paul, and that until he was removed by Stout the " State of Minnesota was his asylum State."

It is a settled rule that a plea in abatement must be strictly construed, and the specific grounds upon which the defendant demands that the prosecution abate must be stated with certainty. *Ward* v. *State,* 48 Ind. 289; *Hardin* v. *State,* 22 Ind. 347 (351). The plea before us simply alleges that the defendant was charged in the original indictment " with conspiracy to defraud an underwriter," and this averment certainly is not sufficient to show that the accused was extradited upon an indictment charging him with an offense different from that for which he was tried and convicted. We can not say that an accused may not be guilty of obtaining money by false pretenses from an underwriter as well as from any one else. We are not unmindful of the existence of the statute respecting the offense of swindling underwriters or insurance companies, but we can not say upon the allegation of the plea that the extradition was upon an indictment charging one offense and the trial and conviction upon an indictment charging another and different crime. The bare naming of an offense in such vague and general terms as those employed in the plea before us does not authorize the conclusion that the offenses were different and distinct, much less does it authorize the conclusion that there were two entirely different offenses growing out of different transactions or occurrences. There is no offense designated by the statute in the terms which the plea employs in describing the offense alleged to have been described in the first indictment. Counsel inform us in their brief that the offense described in that indictment was that defined in section 2138 of the

revised statutes of 1881, but their plea does not so allege. A plea in abatement in order to defeat a prosecution ought, at least, to state the substance of the material allegations of the indictment relied upon as the ground for abating a prosecution. Even if the offense alleged to have been charged in the first indictment had been correctly designated, the averment would not be sufficient, since it is nothing more than the statement of a conclusion, for facts are conspicuously absent. Aside from these considerations, we think the plea is not good, even if it be conceded that the appellant's theory upon the subject of extradition is correct, for the provisions of the two statutes involved are so similar that we can not, even upon appellant's theory as to the effect of extradition, hold that the offenses are so essentially different that extradition upon an indictment charging one of the offenses will not permit the accused to be tried for the other. Elliott's Supp., section 341; section 2138, R. S. 1881.

We are not prepared to assent to the doctrine of counsel that a party brought into this State upon a requisition based upon an indictment charging one offense may not be here tried for a different offense; but we do not deem it necessary to investigate or decide that question, for, conceding that the general theory of the appellant's counsel is correct, their plea is, nevertheless, clearly bad. Upon the general question of extradition we cite *Hackney* v. *Welsh*, 107 Ind. 253, and 35 Central Law Journal, 301. If we were prepared to assent to the appellant's theory, and affirm the general rule to be that where the extradition is upon an indictment charging a specific offense, there can not be a trial for another distinct offense, we could not hold that this case falls within the general rule, for we think that the rule does not apply where the cases, although different in form and incidents, arise out of the same transaction or occurrence. If an indictment should charge larceny where the crime is the closely kindred one

of embezzlement, and it should appear that the charges against the accused grew out of the same transaction or occurrence, he might be tried for embezzlement, although the technical rules discriminate between the two offenses. The conclusion we here assert is required by the decision in the case of *Waterman* v. *State*, 116 Ind. 51. Where the transaction or occurrence is clearly one and the same, the general rule invoked can not apply, even if it be granted that counsel are right in their assertion of it.

There was no error in admitting the insurance policy in evidence. We have already practically decided this question in adjudging that it was not necessary to incorporate the policy in the indictment. A written instrument may often be competent evidence, and yet not be a necessary part of a pleading, and the policy of insurance was here competent evidence, although not a part of the pleading.

It is stoutly contended by the counsel for the State, that, as the record does not show that all the instructions given are contained in it, we can not consider any questions on the giving or the refusal of instructions. The authorities give substantial support to this position. *Ohio, etc., R. W. Co.* v. *Buck*, 130 Ind. 300; *City of New Albany* v. *McCulloch*, 127 Ind. 500. See authorities cited, Elliott's Appellate Procedure, section 722, p. 678, n. 2.

There is another rule which is influential, and that is this: Exceptions can not be reserved to instructions in gross, but must be taken to the instructions specifically. *State* v. *Gregory*, 31 N. E. Rep. 952. See, also, authorities cited, Elliott's Appellate Procedure, section 792.

In meeting the contention of the counsel for the State that no questions are presented upon the instructions for the reason that they are not all in the record, appellant's counsel argue that where instructions are not all in the record the judgment will, nevertheless, be reversed, if those given are so palpably erroneous as that no supposable instructions could cure the errors contained in them, and

we are referred to *Marshall* v. *Lewark*, 117 Ind. 377, and *City of Indianapolis* v. *Murphy*, 91 Ind. 382. The last case named is unfavorable to the appellant upon the question of exceptions to instructions, but the first named case, while fully recognizing the general rule that the record must contain all of the instructions, does declare that where no supposable instructions could cure errors in those given, an exception to the rule exists. Waiving the effect of the failure of the appellant to except specifically to each instruction, but by no means departing from or questioning the rule upon that subject—a rule we fully sanction because required by sound reasons and necessary to the uniformity of procedure—we shall, as a matter of grace and not of right, examine the objections urged to the instructions by counsel.

The objection to the instruction which states that Musgrave and Trout had demanded separate trials is not well taken. It is not error to inform a jury of such a fact; at all events, it is not such a material error as will reverse a judgment.

The court did not err in refusing the instruction asked by appellant, declaring that there could be no conviction unless the evidence showed that Mrs. Musgrave knew of the existence of the policy of insurance. It is possible that an instruction to the effect that the ignorance of Mrs. Musgrave as to the existence of the policy might be considered as a fact bearing upon the question of the appellant's guilt would have been proper, but however this may be, and as to that we express no opinion, an instruction directing an acquittal solely on the ground of her ignorance of the policy was not proper. As the instruction was not correct in the terms in which it was asked there was no error in refusing it, even though the court, had it so elected, might have modified or corrected it so as to make it express the law. See authorities cited, Elliott's Appellate Procedure, section 735, and notes.

It was not essential, as appears from what we have elsewhere said, that Mrs. Musgrave should have been one of the conspirators, nor was it necessary that she should have known of their guilty purpose or acts. The guilt of the appellant does not depend upon what the beneficiary in the policy knew or did not know, but upon what he himself knew and did. It seems to us, indeed, that the want of knowledge on the part of the beneficiary in the policy is strongly against the conspirators, for the natural inference is that their ulterior purpose was to secure the money for themselves. If the policy was taken out by Musgrave on his own life, a beneficiary named and the policy concealed from her, the inference is that neither by his scheme of fraudulently securing the payment of the policy nor his guilty acts did he intend that any one else than he himself should in the end reap the profit. There was, it is quite safe to say, under the evidence, no error committed in refusing the instructions asked upon this point.

We have given the appellant the benefit of a liberal consideration of his appeal—too liberal under the rules—but, for all this, we discover no error that will avail him.

Judgment affirmed.

