THE STATE OF KANSAS v. STEPHEN A. BALLIET.

No. 12,635.   (66 Pac. 1005.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW— *Obtaining Property by False Pretenses.*
On the trial of a person charged with obtaining property by
means of false pretenses, it is not error, where the same is perti-
nent to the evidence, for the trial court to give the following in-
struction: "In order to find that the defendant obtained the
goods and merchandise charged in the information, it is not nec-
essary that you should find that he furnished the consideration
for the transfer or that the title to such goods and chattels passed
to or vested in him. It is sufficient if he obtained the possession
or control of such goods and merchandise, or that such goods
and merchandise were delivered to another at his request or in
accordance with his wishes."

2. —— *Elements of the Offense.* In such case the law does
does not make it an element of the offense that the property shall
be obtained for the use and benefit of the person making the false
pretenses, or that he shall intend to obtain it for himself.

Appeal from Ottawa district court; R. F. THOMP-
SON, judge.   Opinion filed December 7, 1901 (sub-
mitted in July).   Division one.   Affirmed.

*A. A. Godard,* attorney-general, and *F. D. Boyce,*
county attorney, for The State.

*Rees & Mulligan,* and *C. S. Crawford,* for appellant.

The opinion of the court was delivered by

ELLIS, J.: The appellant was convicted in the
court below of obtaining goods by means of false
pretenses, and appealed. It is charged in the infor-
mation that the defendant, with the felonious intent
to defraud John Truex and Thomas Truex of a stock
of goods, made the following false representation to
them :

"That a certain piece of land (describing it) was

rich, level, fertile land, lying on the first bottom of the Arkansas river; that said land was improved by a good house, a splendid well of water; that forty acres were under cultivation, and that all of said land was enclosed by a good fence; that said land was very productive and was fine land on which to grow alfalfa; that there were thousands of acres of alfalfa raised in the vicinity of said land and that said land was of the value of more than $2500. . . . Whereas, in truth and in fact, the said land was not rich, level, or productive; was not bottom land; was unimproved; contained no house, well, or fence; said land was not good land upon which to grow alfalfa; was not in the vicinity where alfalfa was raised or could be grown, and was not of the value of $2500 but was valueless, all of which he, the said Stephen A. Balliet, then and there well knew.''

Except as hereinafter stated the information is formal. The following errors are assigned: (1) The failure of the district court to quash the information, on motion; (2) the refusal to give a certain instruction asked by the defendant; (3) the giving of certain erroneous instructions; (4) the denial of the motions of defendant for a new trial and in arrest of judgment. The motion to quash the information was on the ground that the same did not state facts sufficient to constitute a public offense, and when said motion was heard the court asked the defendant's attorneys to point out any defects. The record recites that they failed so to do, but responded that the motion was on statutory grounds and that they did not wish to argue it. Thereupon the court denied it.

In this court counsel for appellant, for the first time, allege that there is no direct allegation of the ownership of the property obtained by the defendant. After describing the land as to which it is alleged the

false pretenses were made, the information charges that said lands, "he, the said Stephen A. Balliet, then and there wished and offered to exchange with the said John Truex and Thomas Truex for their certain stock of merchandise." Another averment is that said John Truex and Thomas Truex "were induced by said false pretenses and representations, so made as aforesaid, to deliver and exchange for said land their said stock of merchandise." In an early case in Maine this form of indictment was used, though no question seems to have been raised in regard to its sufficiency. (*The State v. Mills*, 17 Me. 211.) McClain, in his work on Criminal Law, adopts the form used in the case just cited, and we have not been referred to any authority holding that the allegations were not sufficient. (1 McClain, Crim. Law, § 711.) Except as an illustration of the ingenuity of counsel in discovering and presenting subtile technicalities the objection is without merit.

It is also contended that the information is defective because it does not allege that the goods were delivered to the defendant. As before stated, the information charges that, through the fraudulent representations, the said John Truex and Thomas Truex "were induced . . . to deliver and exchange . . . their said stock of merchandise" for said land. It is also alleged that "the said Stephen A. Balliet did then and there feloniously, knowingly and designedly receive and obtain the said stock of merchandise from the said John Truex and Thomas Truex, with the intent them, the said John Truex and Thomas Truex, then and there to cheat and defraud of the same." The statutory offense here charged consists of obtaining property by means of false tokens or pretenses. It is distinctly charged that the

defendant did obtain the stock of merchandise from John and Thomas Truex, and that he designedly received the same. These allegations, in connection with the averment that Truex and Truex were induced to deliver the stock, would certainly make it clear that the goods were delivered to the defendant.

Again, complaint is made that the information does not aver in express terms that John and Thomas Truex "believed that the said false pretenses were true." It is averred that they believed the said false pretenses and were induced thereby to part with their property. It is difficult to understand how a person can believe a statement without believing it to be true. The natural inference is that, having parted with their goods, having acted upon the pretenses as men ordinarily do who give full faith and credit to the representations of others in business affairs, they relied implicitly upon them as made.

Because of the insistence of counsel, we have considered each of the foregoing contentions, although it is well settled that no obligation to do so exists. They are mere informalities, which, if pointed out to the court or county attorney, might have been amended without resulting even in delay. Certainly as to such matters, when called upon to do so, the attorneys for the defendant should have stated to the court the grounds of objection to the information which they intended to press and rely upon thereafter. Their refusal to do so relieves this court of any duty in respect to such alleged errors. ( *The State v. Everett*, 62 Kan. 275, 62 Pac. 657, and cases cited.)

The remaining assignments of error may be all considered together. The legal title to the land stood in the name of one May Murphy, and the bill of sale of the goods, at the request of the defendant, ran to her,

although it did not appear that she personally partici-
pated in the trade.    She was present, however, at the
time the inventory of the goods was taken and gave
some clerical assistance therein.    It is claimed that
there was a fatal variance between the allegations of
the information and the proof offered in support
thereof in that, the bill of sale being made out in the
name of Miss Murphy, a presumption arises that the
transaction was for her benefit, and, if it was, coun-
sel claim that defendant could not lawfully be con-
victed under an information which failed to charge
any conspiracy between him and Miss Murphy, or
that the arrangement between them was fictitious and
made to deceive John and Thomas Truex.    The
defendant requested an instruction to that effect,
which was refused, but the court did advise the jury
that if the defendant "obtained from said John Truex
and Thomas Truex the goods and merchandise de-
scribed in the information, then it is not necessary
for the state to prove that the defendant so obtained
said goods for himself or on his own account, or that
he derived or expected to derive any personal or pecu-
niary benefit from the transaction."

After the case had been submitted, the jury re-
quested further instructions with reference to the
matters referred to in the instruction just quoted, and
the court, in writing, defined the word "obtained" as
follows:   "The word 'obtained,' as used in these in-
structions, means, to get hold of, to get possession of."
The next morning the jury were brought in, and the
court gave them the following additional instruction,
which appellant strenuously contends to be erroneous:

"In order to find that the defendant obtained the
goods and merchandise charged in the information, it
is not necessary that you should find that he furnished

the consideration for the transfer or that the title to such goods and chattels passed to or vested in him. It is sufficient if he obtained the possession or control of such goods and merchandise, or that such goods and merchandise were delivered to another at his request or in accordance with his wishes."

In the case of *Musgrave v. The State*, 133 Ind. 297, 307, 32 N. E. 885, 889, the supreme court of Indiana said :

"If the false pretenses of the wrong-doer are such as to deprive the person from whom the money is procured of his money, then money is obtained by false pretenses, and a crime is committed. If, in other words, the wrong-doer does make such false pretenses as induce another to part with his money or property, that money or property is obtained from the owner by false pretenses, because he is deprived of it by criminal means and methods. The law does not make it an element of the offense of obtaining money or property under false pretenses that it shall be obtained for the person making the pretenses himself, or that it shall be intended to obtain it for another, for it is provided that 'whoever shall obtain money or property' by false pretenses shall be guilty of a felony."

The supreme court of Iowa, in *State of Iowa v. Chingren*, 105 Iowa, 169, 175, 74 N. W. 946, 948, said:

"The indictment charges that Conners did 'bargain, trade, set over and deliver unto the said E. J. Chingren a certain stock of goods, wares, and merchandise, . . . which said stock of goods, wares and merchandise above described were received by said E. J. Chingren and taken into his possession.' The evidence tended to establish this allegation. Though the bill of sale was executed to the wife, this was done at his instance. The bargain was with the defendant, and the delivery made to him. That he may have been acting for her, or in her behalf, will not relieve him from the responsibility for what he did."

The case of *State v. Mendenhall*, recently decided by the supreme court of Washington, 63 Pac. 1109, 1111, is in point.   The court said:

"The second assignment of error is that the court erred in not granting plaintiff's motion to dismiss because there was a fatal variance between the information and proof.   It is insisted that the information charges Edward B. Mendenhall with obtaining the goods mentioned under false pretenses, while the proof shows that Edward B. Mendenhall never obtained the goods, but that, if any person obtained the goods, that person was the Cooper State Fruit Company, of which company Mendenhall was the agent.   It is evident from the testimony that if anybody made false and fraudulent pretenses, and obtained the fruit by reason of such misrepresentations, it was the defendant, Mendenhall.   The plea of agency is not available to one who knowingly commits a crime.   We think there is no merit in this assignment.   The question of fact having been submitted to the jury under proper instructions, the judgment is affirmed."

See, also, *Sandy v. The State*, 60 Ala. 58 : *Commonwealth v. Harley*, 48 Mass. (7 Metc.) 462 ; 7 A. & E. Encycl. of L. 705 ; *Allyn v. State*, 21 Neb. 595, 33 N. W. 212.

These authorities are decisive of the propostions raised.   The questions of fact as to whether the transaction, including delivery of the goods, was had directly with Balliet, and whether the representations made by him induced John and Thomas Truex to part with their goods were fairly submitted to the jury.   If it may be said with accuracy that there was a variance, it became unimportant in fact and immaterial in law. Under the circumstances, we do not think any error was committed in recalling the jury and giving them additional instructions, nor do we think there was

any substantial conflict between the instructions so given and the original instructions in the case.

We have examined the record carefully and are convinced that the defendant had a fair trial, and the judgment of the court below is affirmed.

JOHNSTON, SMITH, GREENE, JJ., concurring.