[No. 28042. *En Banc.* November 2, 1940.]

THE STATE OF WASHINGTON, *Appellant,* v. W. C. JOHNSTON, *Respondent.*[1]

*Thor C. Tollefson, William N. Goodwin,* and *Hugo Metzler, Jr.,* for appellant.

*Robert B. Abel,* for respondent.

MAIN, J.—The defendant, W. C. Johnston, was charged, by information which contained one count, with the crime of grand larceny by color or aid of fraudulent and false representations, to which he pleaded not guilty. Subsequently, an amended in-

[1] Reported in 106 P. (2d) 1067.

formation was filed, which contained four counts, and, later, a bill of particulars was filed. The defendant again pleaded not guilty. The cause came on for trial, and, at the conclusion of the state's evidence, the defendant moved for dismissal for the reason that the evidence was not sufficient to take the question of the defendant's guilt to the jury. From the order of dismissal entered, the state appealed.

The Commercial Autoparts, Inc., was a corporation engaged in the business of selling automobiles in the city of Tacoma. The respondent was the president and manager of the corporation. In selling the automobiles, in many cases, if not in all, initial payment was made and installment payments were provided for. In some cases, and probably in most, the autoparts company took a chattel mortgage; in others, a conditional bill of sale. Over a period of two or three years, the respondent sold and assigned to the Lincoln branch of the Puget Sound National Bank, which will be referred to as the bank, many of the mortgages and conditional bills of sale. Whether these were all sales or whether the bank simply extended credit, is not material. During all the time that these transactions were being had, C. W. Greening was the manager of the bank and the only one therein that could either purchase or take chattel mortgages or conditional bills of sale as security for credit.

Subsequently, the autoparts company became insolvent, and a receiver was appointed to take charge of its assets. After the receiver's appointment, facts developed which gave rise to the present prosecution.

Count one of the information is based on a chattel mortgage in which one E. E. Sweet was named as mortgagor. The evidence in support of this count was such that the jury had a right to find that Sweet was a fictitious person.

The second count is based upon a chattel mortgage in which H. H. Thompson was named as mortgagor. The evidence in support of this count was likewise such that the jury had a right to find that Thompson was a fictitious person.

The third count is based upon a chattel mortgage in which K. Thompson, who was a bookkeeper for the autoparts company, was named as mortgagor. The evidence in support of this count showed that the car was not delivered, and that the transaction was simply one devised by the respondent for the purpose of raising money.

The fourth count is based upon a conditional bill of sale signed by Clifford H. Raver as purchaser, and purports to cover a 1937 Chevrolet sedan. Raver testified that he had signed this conditional bill of sale in blank at one time, and that he had purchased a Chevrolet automobile from the autoparts company, but that he had not purchased a 1937 model.

The three chattel mortgages referred to and the conditional bill of sale were assigned to the bank. The respondent, a notary public, took the acknowledgment and verification of all three of the mortgages.

Rem. Rev. Stat., § 2601 [P. C. § 8944], provides:

"Every person who, with intent to deprive or defraud the owner thereof—   . . .

"(2)   Shall obtain from the owner or another the possession of or title to any property, real or personal, . . .   by color or aid of any fraudulent or false representation,   . . .

"Steals such property and shall be guilty of larceny."

It was not necessary that the respondent should have received any money from the bank by reason of the assignment of the mortgages and bill of sale above referred to. Even though he acted solely as the agent of the autoparts company, if he obtained the money by

false or fraudulent representations, he would be guilty of the crime of larceny.

In *State v. Mendenhall,* 24 Wash. 12, 63 Pac. 1109, it was held that a person who, by false and fraudulent pretenses, obtains the goods of another, cannot escape liability for his crime on the ground that he acted merely as an agent in procuring possession of the goods for his principal.

The cases of *Musgrave v. State,* 133 Ind. 297, 32 N. E. 885, and *State v. Chingren,* 105 Iowa 169, 74 N. W. 946, as well as others that might be cited, are to the same effect. But the rule is so well established that multiplication of authorities is unnecessary.

The respondent contends that the evidence was not sufficient to show that Mr. Greening, in the transactions, relied upon any false representation made by the respondent. It is true that, Mr. Greening having died, the state could not produce any direct evidence of such representations. This, however, was not necessary, because, when the mortgages and bill of sale were delivered to the bank, there was an implied warranty that they were what, on their face, they purported to be.

In *State v. Calkins,* 73 Iowa 128, 34 N. W. 777, it was said:

"The instruments purported to be the obligations of Lawrence, and by the act of offering them for sale, and selling them, defendant represented them to be genuine."

In 2 Williston on Contracts (Rev. ed.), 1291, § 445, the author, after referring to the development of the law of implied warranty in the sale of goods during the nineteenth century, stated:

"Accordingly, one who assigns for value a chose in action impliedly warrants in the absence of a manifestation of a contrary intention that the claim is genuine

and legally enforceable to the amount, if any, specified in the assignment."

Even though there was an implied warranty that the instruments were genuine, the respondent further contends that there is no evidence that Mr. Greening relied upon them. But, when the purchase was made, the natural inference would be that the managing officer of the bank relied thereon.

In *State v. Balliet*, 63 Kan. 707, 66 Pac. 1005, it was said:

"The natural inference is that, having parted with their goods, having acted upon the pretenses as men ordinarily do who give full faith and credit to the representations of others in business affairs, they relied implicitly upon them as made."

The evidence was sufficient to take the case to the jury, and the trial court erred in dismissing it.

The order appealed from will be reversed, and the cause remanded to the superior court with direction to grant a new trial.

ALL CONCUR.