# PEOPLE v. CHEFF

1. CONTINUANCE—CRIMINAL LAW—TRIAL PREPARATION—ADEQUATE TIME.

The trial court did not abuse its discretion in denying a criminal defendant's motion for a continuance when the prosecutor on the first day of trial elected to proceed on only one of four informations filed against the defendant, where the trial was continued after the first day so the judge could attend a judicial conference and this gave defense counsel six days to prepare his case, and where defense counsel told the court prior to commencement of trial that he understood the nature of the charges against defendant.

2. INDICTMENT AND INFORMATION—SUFFICIENCY—FAIRLY APPRISING OF CHARGE.

An information accusing defendant of obtaining checks by making false representations is sufficient to sustain a conviction of obtaining money under false pretenses although the information does not allege the checks were payable to defendant or his company where the information does allege the checks were given to defendant personally and where the information as a whole fairly apprised the accused of the offense charged.

3. LARCENY—CORPORATE OFFICER—CORPORATE ACT—CRIMINAL RESPONSIBILITY.

A corporate officer is criminally responsible for the fraudulent larceny of the property of another through a corporate act where the act was perpetrated by the individual officer, at his discretion, or by his permission.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur 2d, Continuance § 28.
[2] 32 Am Jur 2d, False Pretenses § 58 *et seq.*
[3] 19 Am Jur 2d, Corporations §§ 1391–1393.
50 Am Jur 2d, Larceny § 79.

(1)

Appeal from Macomb, Frank E. Jeannette, J. Submitted Division 2 October 7, 1971, at Lansing. (Docket No. 8940.)   Decided November 22, 1971.

Louis H. Cheff was convicted of obtaining money under false pretenses with intent to defraud. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, and *Thaddeus F. Hamera,* Chief Appellate Lawyer, for the people.

*Smith, Bokos, Jones & Plakas,* for defendant.

Before: Quinn, P. J., and Danhof and Targonski,* JJ.

Targonski, J.   Louis H. Cheff and other individuals had formed the First National Mortgage Corporation approximately two to three years prior to May 14, 1969, the date of the transaction complained of in this case.   At the time the defendant was serving as president of said corporation.

It was alleged at the trial that on May 4, 1967, the defendant offered Mr. Couet, the complainant, a purported first mortgage on the house and property located at 3049 East Outer Drive, Detroit, Michigan. Mr. Couet then wrote three checks which totaled $3,500, which were made payable to the First National Mortgage Corporation, and in return received the purported first mortgage on the property located at that address.   Subsequent thereto, Mr. Couet received a total of 14 monthly principal and interest payments in the agreed amount of $60 per month as

_____
* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

partial repayment of the money received by the corporation. Then, in the latter part of 1968, the First National Mortgage Corporation suffered financial difficulties and found it necessary to institute bankruptcy proceedings. It was at this time that Mr. Couet's monthly payment check from the First National Mortgage Corporation was returned by the bank for insufficient funds. The complainant then discovered that the purported first mortgage on the property located at 3049 East Outer Drive was, in fact, a mortgage on the property located at 3702 Charlevoix in the City of Detroit. Mr. Couet then filed this complaint against the defendant.

The complainant, on direct examination, testified that he had known the defendant in a business capacity since 1964 and that he discussed the transaction one week prior to the date thereof personally with the defendant who represented that he had an outstanding deal on the Outer Drive property, a home worth approximately $25,000 with the people owning same needing approximately $3,500. He advised the complainant to examine the home but not to speak to the people because of the fact that they were elderly spinsters and were not to be disturbed. Further, the defendant advised the complainant that this deal would go fast and that he should act promptly. About a week after the initial conversation complainant advised defendant that he was satisfied with the transaction and as a result of such second conversation, the defendant came to the complainant's home and made further assurances that the property in question was worth between $25,000 to $35,000 and that nobody would lose it for a $3,500 mortgage. The transaction was then consummated.

On cross-examination Mr. Couet testified that the defendant told him that he was president and owner

of the First National Mortgage Corporation and it developed that the checks in question were deposited to the account of the First National Mortgage Corporation and that the complainant believed at all times that he was dealing with the defendant as the owner of the First National Mortgage Corporation as an individual.

Defendant appeals from conviction by jury on the charge of obtaining money under false pretenses with intent to defraud contrary to MCLA 750.218; MSA 28.415.

The first issue raised by the defendant is whether or not the people established the requisite degree of conformity between the facts alleged in the information and the subsequent trial testimony. The second question, one of first impression, is whether an officer of a corporation may be held criminally responsible for obtaining money under false pretenses with intent to defraud through a corporate act where the act was done by the individual officer or at his discretion. The third issue raised is a question of procedure, whether or not the defendant was denied due process because the prosecution, on the day of trial, elected to proceed on only one of four informations filed against the defendant. We will consider the third question first for the reason that it is a matter which has been considered previously and which if answered in the affirmative would necessitate remand for trial and would make all other questions moot.

On July 7, 1969, separate preliminary examinations were held on each of four warrants filed against the defendant. The defendant was arraigned on August 14, 1969, and trial was set for October 3, 1969, but was later adjourned to November 18, 1969. About one week prior to the trial, the trial court's

secretary telephoned the defendant's counsel and asked him if he would be ready for trial. The attorney advised the secretary that he was ready for trial. Therefore, the case came to trial 134 days after the preliminary examination on the charge and 96 days subsequent to the date of the defendant's arraignment on the information on the charge.

On the November 18, 1969 trial date, the defendant through his attorney requested a continuance on the basis that he did not have adequate time to prepare because the prosecution elected at that time to proceed on only one of the four informations filed against the defendant. Counsel alleges that as a result thereof defendant did not have reasonable notice necessary for him to adequately prepare and defend against a specific charge elected for trial. The trial was commenced on that day but was continued because of the trial court's attendance at a judicial conference so that defense counsel had an opportunity during such recess to contact any witnesses that he wished to call. Furthermore, the prosecution did not rest its case until Friday, November 21, 1969, and the court was further recessed until Tuesday, November 24, 1969, which made for an interim of six days during which counsel had further opportunity to prepare. It should be noticed that defendant's attorney did not elect to present any witnesses, even though he had previously based his request for an adjournment primarily upon the necessity of securing the presence at trial of a number of witnesses.

Moreover, the defendant's counsel told the court, "I have not represented to the court that I am not ready because I do not understand the nature of the charges against Mr. Cheff". This commentary was made as part of the exchange of comments between the attorneys and the court prior to the commencement of trial.

Thus, it is apparent that defendant's attorney had more than sufficient time within which to prepare a defense. It is also apparent that he understood the nature of the charges against his client. Defendant further alleges that since reasonable notice was not given, a motion for a continuance should not have been denied by the trial court.

In viewing the court's action, attention must be given to the following statute:

"No adjournments, continuances or delays of criminal causes shall be granted by any court except for good cause shown in the manner provided by law for adjournments, continuances and delays in the trial of civil causes in courts of record." MCLA 768.2; MSA 28.1025.

This statute has support from an unending number of cases. One of these is *People* v. *Logue,* 30 Mich App 669, 671 (1971), in which the Court states:

"Under MCLA § 768.2 (Stat Ann 1954 Rev § 28-.1025), the granting or denial of a continuance in a criminal case is a matter of discretion with the trial court. The case of *People* v. *O'Leary* (1967), 6 Mich App 115, reaffirms the discretionary aspect of granting or denying a continuance and adds that prejudice to the defendant must be apparent or proven to have been at least probable to show an abuse of discretion of a trial court in denying a motion for continuance in a criminal case. It is clear from the record that the defendant was not prejudiced by the denial of the grant of continuance by the trial court."

See, also, *People* v. *Grenier,* 34 Mich App 93 (1971).

Thus, based upon the facts shown that defendant's counsel was afforded more than ample time for trial preparation, a good-cause argument was not presented in support of the motion for a continu-

ance.  Consequently, there could not be any abuse of discretion in this instance.

The parties are in agreement that the complainant did not receive repayment of any monies advanced on the mortgage in question beyond the 14 monthly principal and interest payments in the amount of $60 each previously reported in the statement of facts.  The question here is "did the people establish the requisite degree of conformity between the facts alleged in the information and the subsequent trial testimony".

For that purpose we quote from the information in the case at bar as follows:

"Louis H. Cheff with intent to cheat and defraud one Elmer Couet * * * did designedly and falsely represent and pretend that he, the said Louis H. Cheff was conveying a first real estate mortgage on property located at 3049 Outer Drive, Detroit, Michigan * * * [and] that * * * said Elmer Couet * * * did deliver money in the amount of $3,500 to the said Louie H. Cheff [who] did then and there * * * obtain from the said Elmer Couet, the said money."

In the instant case, the defendant was charged with and convicted of violating MCLA 750.218; MSA 28.415, which provides:

"Any person who, with intent to defraud or cheat, shall designedly, by color of any false token or writing or by any false or bogus check or other written, printed or engraved instrument, by spurious coin or metal in the similitude of coin, or by any other false pretense, cause any person to grant, convey, assign, demise, lease or mortgage any land or interest in land, or obtain the signature of any person to any written instrument, the making whereof would be punishable as forgery, or obtain from any person any money or personal property or the use of any

instrument, facility or article or other valuable thing or service, or by means of any false weights or measures obtain a larger amount or quantity of property than was bargained for, * * * if such land or interest in land, money, personal property, use of such instrument, facility or article, valuable thing, service, larger amount obtained or less amount disposed of, shall be of the value of $100.00 or less, shall be guilty of a misdemeanor; and if such land, interest in land, money, personal property, use of such instrument, facility or article, valuable thing, service, larger amount obtained or less amount disposed of shall be of the value of more than $100.00, such person shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years or by a fine of not more than $5,000.00."

The defendant urges this Court to hold that the people failed to sustain the burden of proof necessary to establish the required degree of conformity between the facts alleged in the information and those facts testified to at trial because the information does not allege that the checks were payable to the First National Mortgage Corporation although delivered to Mr. Cheff personally. This argument is wholly unfounded upon a glance at the following statute:

"The indictment or information shall contain: 1. The nature of the offense stated in language which will fairly apprise the accused and the court of the offense charged; * * * ." MCLA 767.45 (1); MSA 28.985(1).

A careful research of the authorities indicates that there are no Michigan cases on this point. However, it would appear that this issue is resolved in *Hitchcock* v. *State,* 47 Ohio App 90; 190 NE 773 (1933). There, the defendant was a managing officer of a corporation which engaged in the business

of preparing abstracts and certificates of title and dealing in mortgages. Complainant purchased a note and mortgage from the company which were duly assigned and delivered to him. Subsequently, complainant delivered the same to the defendant for collection on the note and received a receipt therefor signed by the defendant as secretary of the company. The company collected the amount due, placed the sum in the corporate account and used the same in its business. A receiver was appointed for the company and the complainant did not receive his money because of the financial problems of the corporation. Defendant was tried and convicted of embezzlement.

On appeal, defendant raised the issue that indictment did not charge that the defendant performed the acts complained of on behalf of, and as an officer of, the corporation. The Court replied at 47 Ohio App 97; 190 NE 775:

"While the indictment did not charge that the defendant performed the acts complained of on behalf of, and as an officer of a corporation, it did describe the transaction complained of with sufficient certainty to inform the defendant of the charge against him and apprise him of what the state proposed to prove, and was therefore sufficient."

Furthermore, even if a defect could be established in the information, there was no allegation of nor any evidence that there was error committed by such defect that deprived the defendant of substantial rights or resulted in a miscarriage of justice. MCLA 769.26; MSA 28.1096.

The remaining question raised by the defendant appears as questions II and III of his brief. We have combined these as one question as to whether or not an officer of a corporation may be held criminally responsible for obtaining money under false

pretenses with intent to defraud through a corporate act, where the act was done by the individual officer or at his discretion.

For purposes of this discussion we quote Gillespie's analysis of MCLA 750.218; MSA 28.415:

"A false pretense, within the meaning of the statute, may be defined as a representation of some present, existing fact or circumstance, intended and calculated to mislead, which is not true, and, which actually does deceive and induces the person deceived to part with something of value by reason thereof." 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1432, p 1821.

See *People* v. *Reynolds,* 71 Mich 343 (1888); *People* v. *Widmayer,* 265 Mich 547 (1933).

The essential elements of this offense are: (1) an intent to defraud; (2) the use of false pretenses or false representations concerning an existing fact or circumstance; and (3) the accomplishment of the intended fraud by means of such false pretenses or false representations. 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1432, p 1821. See *People* v. *Wakely,* 62 Mich 297 (1886); *People* v. *Lee,* 259 Mich 355 (1932); *People* v. *Bagwell,* 295 Mich 412 (1940).

It is stated, in 19 Am Jur 2d, Corporations, § 1391, p. 787, that:

"The general rule is that where the crime charged involves guilty knowledge or criminal intent, it is essential to the criminal liability of an officer of the corporation that he actually and personally did the acts which constitute the offense or that they were done by his direction or permission. An officer or agent, however, cannot shield himself from criminal responsibility for his own act on the ground that it was done in his official capacity as an officer of a cor-

poration; nor can he assert that acts in corporate form are not his acts merely because they are carried out by him through the instrumentality of a corporation which he controls and dominates and which he employs for that purpose." (Footnotes omitted.)

It appears in 19 CJS, Corporations, § 931, pp 363, 364, that:

"Officers, directors, or agents of a corporation participating in a violation of law in the conduct of the company's business may be held criminally liable individually therefor. So, although they are ordinarily not criminally liable for corporate acts performed by other officers or agents, and at least where the crime charged involves guilty knowledge or criminal intent, it is essential to criminal liability on his part that he actually and personally do the acts which constitute the offense or that they be done by his direction or permission. He is liable where his *scienter* or authority is established, or where he is the actual present and efficient actor."

The following statement has been excerpted from 2 Wharton, Criminal Law & Procedure (12th ed), § 583, pp 307–310:

"The defendant must act with the intent to deceive or defraud the victim by causing him to part with his money or property in reliance on the defendant's false representation.    *  *  *
"There is no doctrine of *lucri causa* in the field of false pretenses. It is accordingly immaterial that the defendant did not gain or intend to gain any personal benefit or advantage from obtaining the property from the victim. Because of this, an employee or a corporate officer may be guilty of false pretenses, although it is his employer or the corporation which benefits from the representation. To illustrate, it has been held that when an official of a bank obtains a deposit of money by means of false

statements concerning the solvency of the bank, he may be convicted of the crime of obtaining money by false pretenses."

In 35 CJS, False Pretenses, § 25, p 845, it is stated:

"To convict of obtaining property by false pretenses, it is necessary that the property obtained, or some part thereof, should have been obtained by or for accused. * * * Further, the property need not be obtained by accused for himself, it being sufficient if, as a result of his false representations, it is delivered either for the benefit of accused or for another's benefit."

It is stated, in 6 Callaghan's Michigan Civil Jurisprudence, Corporations, § 116, p 290, that:

"A director, officer or agent is criminally liable for his acts, though done in his official capacity, if he participates in the unlawful act either directly or as an aider, abettor or accessory."

There are no Michigan cases on this point even though the defendant in his brief cites *People* v. *Behee*, 90 Mich 356 (1892), as analogous to the facts in the case at bar. An examination of that case indicates that it deals with facts totally unrelated to the ones in the case at bar and that the case, for that reason, is not analogous to the one under consideration. We do, however, give consideration to cases from other jurisdictions which we believe helpful in resolving this issue.

In *State* v. *Thomas,* 123 Wash 299; 212 P 253; 33 ALR 781 (1923), the defendant was charged with, and convicted of, grand larceny. He was the president and managing officer of a corporation which was engaged in the real estate, insurance, and mortgage loan business. Defendant Thomas had notified

the complainant that a note secured by a mortgage then owned by the complainant would be paid within a couple of days. The complainant then delivered the note and the mortgage to defendant Thomas, who was acting for the corporation, for collection. The complainant received a receipt signed, "Joseph E. Thomas & Company, Inc., by Joseph E. Thomas". The person obligated paid the note with a check payable to the order of Joseph E. Thomas & Company, Inc. The check was deposited in the corporation's account and, in due course, was paid by the payor bank. When the check was received, the corporation delivered the cancelled note and a satisfaction of the mortgage to the obligor. The complainant, after making several attempts to collect the sum due him, was informed that he must see the corporation's lawyers. The corporation was financially distressed and a receiver had been appointed.

The issue before the Court in *State* v. *Thomas, supra,* was whether or not defendant Thomas could be held criminally responsible for the act of the corporation in misappropriating the money due the complainant. The *Thomas* Court, in concluding that the defendant could not escape criminal liability, stated:

"He (Thomas) directly participated in the transaction which resulted in the money, which was paid in for (the complainant)   *   *   *   being placed in the account of the corporation with its bank. He (Thomas) knew at this time that the corporation was in financial difficulties   *   *   *   . It is true that the money was not paid in to him individually, but came in through an employee of the corporation, who, acting under the general direction of the appellant and in accordance with the general policy of the company in handling such matters, deposited the same in the corporation's account. There is authority supporting the holding that the appellant (Thom-

as) is criminally liable * * * ." *Thomas, supra,* 123 Wash at 303; 212 P at 254; 33 ALR at 783–784.

In *State* v. *Johnston,* 6 Wash 2d 141; 106 P2d 1067 (1940), the defendant was charged with four counts of grand larceny by color or aid of fraudulent and false representations. He was president and manager of a corporation engaged in selling automobiles. The first two counts concerned a chattel mortgage naming a fictitious mortgagor, while the third count concerned a chattel mortgage on an undelivered car. The last count concerned a conditional bill of sale purporting to cover an automobile other than the one purchased. These chattel mortgages and the conditional bill of sale had been assigned to a bank.

The *Johnston* Court, in affirming Johnston's conviction, said:

"It was not necessary that the respondent should have received any money from the bank by reason of the assignment of the mortgages and bill of sale above referred to. Even though he acted solely as the agent of the auto parts company, if he obtained the money by false or fraudulent representations, he would be guilty of the crime of larceny." *Johnston, supra,* 6 Wash 2d at 143, 106 P2d at 1068.

Even though the money was received and misappropriated by the corporation, the scheme for acquisition of the funds was a fraudulent act perpetrated by Mr. Cheff, the president and principal officer of the corporation. Thus, in the light of the generally recognized principle that a corporate officer is criminally responsible for the fraudulent larceny of the property of another through a corporate act where the act was done by the individual officer, at his discretion, or by his permission and in view of *State* v.

*Thomas, supra,* and *State* v. *Johnston, supra,* it was no defense here that the money was paid to the corporation and not to the defendant, Cheff, personally.

Affirmed.

All concurred.