COMMONWEALTH *vs.* JAMES H. LANGLEY.

Suffolk.   May 21, 1897. — June 29, 1897.

Present: FIELD, C. J., HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Obtaining Property by False Pretences — Indictment — Motion to Quash — Defence — Evidence.*

A motion to quash an indictment, the objections stated in which are general, and not assigned specifically, as required by Pub. Sts. c. 214, § 25, is rightly overruled.

It is no defence to an indictment for obtaining property by false pretences that the title to such property, which came into the defendant's possession as treasurer of a corporation, did not pass to himself, but to the corporation.

At the trial of an indictment for obtaining property by false pretences, evidence that the money obtained by the defendant's fraud was disbursed by a corporation of which he was treasurer, and that he personally received no benefit from it, is incompetent.

INDICTMENT, in five counts, under Pub. Sts. c. 203, § 59.   The first count was as follows:

" The jurors for the Commonwealth of Massachusetts, on their oaths, present that James H. Langley, of Boston aforesaid, on the eleventh day of March, in the year of our Lord one thousand eight hundred and ninety-six, at Boston aforesaid, with intent to cheat and defraud one James N. Clifford, and with the view and intent, by means of the false pretences and representations hereinafter set forth, to obtain and get into his, said Langley's hands and possession the goods and chattels of the said Clifford, hereinafter mentioned, did then and there unlawfully, knowingly, and designedly make certain false and fraudulent statements, pretences, and representations concerning the ' National Contract and Supply Company,' a corporation legally established and existing, of which said corporation he, the said Langley, was then and there an officer, to wit, the First Vice President; that is to say, the said Langley did then and there, unlawfully, knowingly, and designedly, falsely pretend and represent to the said Clifford that fifteen hundred and fifty shares of the capital stock of said corporation had then been subscribed and paid for; that said corporation then had a cash working capital of between eighty

thousand dollars and ninety thousand dollars; that between eighty thousand dollars. and ninety thousand dollars in cash had been paid into the treasury of the said corporation; that of said sum so paid in, as aforesaid, fifty thousand dollars was then held and deposited by and with Rufus G. Fairbanks and Alfred R. Goodrich, as trustees, as a guarantee fund for the performance of contracts that might thereafter be made by said corporation; that said corporation had theretofore purchased, and then owned, a factory and building in Brattleborough, in the State of Vermont; that said corporation had paid for said factory and building a sum of money somewhat less than twenty thousand dollars; that said corporation had theretofore ordered machinery to be made for use in said factory and building for the manufacture of undertakers' supplies; that one George C. Bonney had bought fifty shares of said capital stock of said corporation, and had paid said corporation therefor the sum of twenty-five hundred dollars.

"And the said Langley then and there asked and requested the said Clifford, in consideration of said false and fraudulent pretences, and each thereof, to subscribe as a co-associate member of said corporation, and for fifty shares of the capital stock of said corporation; and to pay therefor to him, the said Langley, the sum of twenty-five hundred dollars, said subscription and said payment of said sum to be made by him, the said Clifford, upon the agreement, understanding, and condition that the said Clifford should thereafter be retained and elected a director of said corporation, and Second Vice President of the same, and that he should have the supervision and management of the 'Provident Savings Department' of said corporation in New England, being provided with an office and necessary clerical assistance, and receiving, in addition to necessary business travelling expenses, a salary of one hundred and fifty dollars per month for the first three months that he, the said Clifford, should serve as such Director and Second Vice President with the supervision and management as aforesaid; which said salary should thereafter be increased to the rate of twenty-five hundred dollars per year for the first year from the date of said subscription, and not less than three thousand dollars per year for any succeeding time.

" And the said Clifford then and there believing the said false representations and pretences, so made as aforesaid, by the said Langley, and being deceived thereby, was induced by reason of the false pretences and representations, so made as aforesaid, to subscribe, and did then and there subscribe, upon the conditions aforesaid, as a co-associate member of said corporation, and for fifty shares of said capital stock of said corporation, as aforesaid, which said shares were thereafter to be issued to said Clifford by said corporation, and to pay and deliver, and did then and there pay and deliver upon the conditions aforesaid, to the said Langley, for and in exchange therefor, one check and order for money for the amount and of the value of twenty-five hundred dollars, one piece of paper of the value of twenty-five hundred dollars, of the property, moneys, goods, and chattels of said Clifford, which said check and order for money, and said piece of paper, the said Langley did then and there receive and obtain ; and the said Langley did then and there receive and obtain the said property, moneys, goods, and chattels of the said Clifford by means of the false pretences and representations aforesaid, and with intent to cheat and defraud.

" Whereas, in truth and in fact, fifteen hundred and fifty shares of the capital stock of said corporation had not then been subscribed and paid for, so as aforesaid, but many less shares had then been subscribed and paid for.   And whereas, in truth and in fact, the said corporation did not then have a cash working capital of between eighty thousand dollars and ninety thousand dollars, so as aforesaid; and whereas, in truth and in fact, so large a sum as between eighty thousand dollars and ninety thousand dollars in cash had not been paid into the treasury of said corporation, so as aforesaid; and whereas, in truth and in fact, of said sum so paid in, as aforesaid, as large an amount as fifty thousand dollars was not then held and deposited by and with said Fairbanks and said Goodrich, as trustees, as such guarantee fund, as aforesaid; and whereas, in truth and in fact, said corporation had not theretofore purchased, and did not then own, a factory and building in Brattleborough, in said State of Vermont, so as aforesaid; and whereas, in truth and in fact, said corporation had not paid for said factory and building a sum of money somewhat less than twenty thousand dollars, or any sum

whatever, so as aforesaid; and whereas, in truth and in fact, said corporation had not theretofore ordered machinery to be made for use in said factory and building for the manufacture of undertakers' supplies, so as aforesaid; and whereas, in truth and in fact, said George C. Bonney had not bought fifty shares of said capital stock of said corporation, and had not paid said corporation therefor said sum of twenty-five hundred dollars, or any sum whatever, so as aforesaid. All of which the said Langley then and there well knew.

"And so the jurors aforesaid, upon their oath aforesaid, do say that the said Langley, by means of the false pretences aforesaid, unlawfully, knowingly, and designedly, did then and there receive and obtain from said Clifford the said property, moneys, goods, and chattels of the said Clifford with intent to defraud, against the law, peace, and dignity of said Commonwealth, and contrary to the form of the statute in such case made and provided."

The second and third counts are not material to be stated; and the fourth and fifth counts contained allegations similar in form and substance, although recited with less detail, to those in the first count, the name of the person alleged to have been cheated being Lothrop J. Wilder in the fourth count and Charles H. Goodwin in the fifth count.

In the Superior Court, before the jury were impanelled, the defendant moved to quash the indictment, "for the reasons that, as applied to each and every assignment in each and every count of the indictment, there is no offence formally, substantially set forth; that, as applied to each assignment in said indictment, it is wanting in due precision, wanting in certainty; and that there is no offence against the law set forth in said indictment." *Wardwell*, J., overruled the motion; and the defendant excepted.

At the trial, there was evidence that, before the dates named in the indictment, the defendant and others had caused a corporation to be formed under the laws of the State of Vermont, under the name of the National Contract and Supply Company, which corporation was to engage in the business of selling territory and rights in a scheme for the burial of the dead by payments on the instalment plan, and the manufacture of undertakers' supplies; that the defendant, with others, went to Ver-

mont, and had a meeting at Bellows Falls, for the purpose of forming a corporation, to be named the National Contract and Supply Company, to carry on the business of burying the dead, etc., at which only the defendant took any active part; that the scheme was originated and owned by him; and that, at the meeting to organize the corporation, all the votes, declarations, statements, and agreements therein entered into were done and performed, devised, dictated, and outlined by the defendant.

There was also evidence that the defendant was treasurer and vice president and a director of this corporation at and before the time complained of; that he owned most of its stock, and managed its business and affairs, and put in most of the property owned by it; that the offices, except those held by Langley and Clifford, were filled by the former and persons to whom he gave stock; that he was the person who dealt with those named in the indictment and others, and was in the direction and control of the affairs of the corporation; that the corporation had a place of business in Boston, and had filed with the commissioner of corporations in this Commonwealth a statement and power of attorney, as required by the law regulating foreign corporations; that the money mentioned in the indictment was paid to the defendant by his direction and at his solicitation, he receiving the money as described in the indictment, and signing for the money as treasurer of the corporation; that the only property owned by the corporation at the time of its incorporation was an option for the purchase of certain real estate in Vermont, which the testimony tended to show had no value, and which option had expired; that the company also had an abstract of title showing the dispositions and chain of title of certain lands in Kentucky, which lands, the defendant testified, he owned and controlled; and that he had caused a deed of that property to be made to the trustee described in the indictment, but he had never delivered the same.

The evidence for the government tended to show that all of the defendant's acts were pretences to enable him to obtain the money of the persons named in the indictment.

A check for the payment of $2,500, as described in the first count, was payable to the order of the National Contract and Supply Company, and the same was received by the defendant, and collected by him as its treasurer.

There was evidence that, immediately after Clifford paid the sum of $2,500, for which he received an assignment of certain territory and certain shares of stock, he was elected a member of the board of directors of the corporation; and that he attended the meetings of the board of directors until some time in August, 1896. The defendant, who testified in his own behalf, produced what was said to be the cash-book of the corporation, and, after testifying that it was in his handwriting, was asked the following question: " Now, using the book as a memorandum, tell the jury what was done with the money you received? " This question was objected to, and excluded; and the defendant excepted. The defendant was then asked as follows: "Now, you can tell, in a general way, without the use of the book, what was done with the money you received, as treasurer of the corporation, from these complainants, Goodwin, Wilder, and Clifford." This question was objected to, and excluded; and the defendant excepted.

The answer would have been that all the moneys received from the complainants by the defendant as treasurer of the corporation had been disbursed by the corporation by the direction of the board of directors; but there was no offer to show that Wilder received back any part or the whole of the money, and the testimony was that no part of it was ever received back by Goodwin.

The defendant asked the judge among other things, to instruct the jury as follows:

" 1. If the defendant acted as an officer or agent of the National Contract and Supply Company in the transactions alleged in the indictment between the defendant and Clifford, Wilder, and Goodwin, respectively, he cannot be held personally criminally responsible for any representation set forth in any count of the indictment.

" 2. If the money of Clifford, Wilder, and Goodwin, respectively, was paid for stock in the company, and they became officers or members of the corporation, and continued to act with and for the corporation, and the money went into the treasury of the corporation, and debited to the use and benefit of the corporation, they respectively cannot be said to have parted with this money, or that any money was obtained from them, respectively, by the defendant."

The judge refused to give such instructions; and the defendant excepted.

The jury returned a verdict of guilty upon the first, fourth, and fifth counts only; and the defendant alleged exceptions.

*G. E. Curry & P. J. Sondheim,* for the defendant.

*M. J. Sughrue,* First Assistant District Attorney, for the Commonwealth.

BARKER, J.  1. The motion to quash was rightly overruled. The objections stated in it were general, and were not assigned specifically, as required by the statutes. See Pub. Sts. c. 214, § 25; *Commonwealth* v. *Sholes,* 13 Allen, 554; *Commonwealth* v. *Intoxicating Liquors,* 105 Mass. 176; *Commonwealth* v. *Murray,* 135 Mass. 530; *Commonwealth* v. *Jenks,* 138 Mass. 484. Besides this, the indictment was good.

2. The defendant contends that he was not guilty, because the title of the property out of which he cheated the persons whom he defrauded by his false pretences, and which so came into his possession as treasurer of the corporation, did not pass to himself but to the corporation. It was not necessary to allege or prove that he got the property on his own account, or that he derived or expected to derive personally any gain. *Commonwealth* v. *Harley,* 7 Met. 462. An intent to defraud, accompanied by the actual commission of a fraud, by means of the false pretences used for the purpose of perpetrating it, constitutes the offence. *Commonwealth* v. *Drew,* 19 Pick. 179, 182. *Commonwealth* v. *McDuffy,* 126 Mass. 467. If, by the use of false pretences, one is defrauded by being induced to part with his possession of property, and to confide it to the defendant, when he would not otherwise have done so, the defendant is guilty of the offence. *Commonwealth* v. *Coe,* 115 Mass. 481, 502.

A person who is an officer of a corporation must answer personally for the crimes which he commits while acting in his official capacity, where the wrong is done to third persons for the benefit of the corporation, as in the more ordinary case where the wrong is done to the corporation for the benefit of himself. *Commonwealth* v. *Moore,* 166 Mass. 513. In the present case there was no allegation that the defendant intended to acquire the property for himself, but only to obtain and get it into his hands and possession. Aside from some possible question of

variance this was enough, and no question of variance was raised at the trial or argued here.

3. The remaining contention made by the defendant's brief is, in substance, that evidence that the money obtained by his frauds was disbursed by the corporation, and that he personally received no benefit from it, was competent in his defence. So far as this contention is founded upon the theory that the offence was not committed unless he intended to get the title to the property in himself, or to personally get pecuniary benefit from it, it is disposed of by what has been said above. So far as such evidence might have tended to show the defendant's true intent, he cannot complain that it was excluded. The subsequent disposition of the money by the corporation was no part of the transaction which constituted his crime. That transaction closed with his obtaining the possession of the money by means of his false pretences. If the Commonwealth had contended that the corporation was a sham or a fiction, evidence of what became of the money might have tended to throw light upon that subject. But the indictment alleged, and the government proved, the existence of the corporation. The disposition of the money by it was a subsequent fact, not part of the transaction itself. So far as others than the defendant may have acted in the disposal of the money by the corporation, it was the act of third persons; and while the defendant's own acts in that regard might be used against him, he could not make evidence in his own favor, outside of the transaction itself.

These are all the questions argued on the defendant's brief.

*Exceptions overruled.*