## TYLER TERM, 1906.

### A. J. SPEER v. THE STATE.

No. 3543. Decided October 10, 1906.

1.—Swindling—Verbal Representation—Acts—False Pretense.

In the offense of swindling there need not be verbal representation; acts of a fraudulent nature calculated to deceive may constitute the false pretense.

2.—Same—Information—Amount Involved—Jurisdiction—Money—Value.

Where upon trial for swindling, the information alleged that prosecutor was swindled by defendant out of a check for $91.95, which was also alleged to be the value of same, and then proceeded in detail to allege the character of the swindle, and that the defendant acquired the excess of the amount of the money over that

to which he was entitled, and which excess was alleged at $2.70, it sufficiently fixed the jurisdiction in the county court and alleged the value. Money under our statute has a distinctive meaning, significant of value.

### 3.—Same—Charge Refused—Appropriation.

On a trial for swindling where the evidence showed fraudulent weight of hogs which defendant sold and delivered for his son to the prosecutor, and that the false pretense was committed, if committed at all, by the father and not the son, it was not material to whom the benefit of the swindle accrued, and there was no error in the court's refusal of a requested charge that if the hogs did not belong to defendant, but were owned by his son, and the fraudulent intent enured to the son's benefit, to acquit the defendant.

### 4.—Same—Charge of Court—Declarations Between Third Parties.

Where upon trial for swindling, the court instructed the jury not to consider conversations between third parties, and there was no exception to the introduction of such testimony, there was no error.

### 5.—Same—Charge of Court—Intent—Fraudulent Weight.

Where upon trial for swindling, the question was raised by the evidence whether the defendant was responsible for the fraudulent weighing of a piece of iron together with a load of hogs on a wagon, by which extra weight of said iron the prosecutor overpaid the amount due defendant for said hogs; and it was also a question whether said iron accidentally fell from the wagon after the hogs were delivered and the wagon reweighed, or whether it was intentionally thrown off by defendant; the court correctly charged that if such iron fell from the wagon of the defendant without his knowledge, or that he did not know that the weight of said iron was included in the gross-weight with the hogs, or was included by mistake or if they had a reasonable doubt as to either of these questions, to acquit the defendant.

Appeal from the County Court of Robertson. Tried below before the Hon. J. W. Woods.

Appeal from a conviction of swindling; penalty, a fine of $100 and twenty-five days confinement in the county jail.

The opinion states the case.

*Kinard & Goodman, Bailey, Bartholomew & Morehead,* for appellant.—On question of sufficiency of information: Sands v. State, 30 Texas Crim. App., 578. On question of intent and ownership of property: Stringer v. State, 13 Crim. App., 520; May v. State, 15 Texas Crim. App., 430; Bird v. State, 27 Texas Crim. App., 635.

*J. E. Yantis,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of the offense of swindling, and his punishment assessed at a fine of $100 and twenty-five days confinement in the county jail; hence this appeal.

The facts show that the swindling was consummated substantially in the following manner: Appellant made a sale of two wagon loads of hogs to prosecutor. These hogs were weighed on the scales of a third party. He gave a written certificate or statement of the weights; and on this statement prosecutor paid for said two wagon loads of hogs, at the rate of $4.42 ½ per hundred pounds. The proof shows that the wagons with the hogs in them were first weighed, and a piece of iron, weighing 61 pounds, was on one of the wagons, which was

driven by appellant. That the hogs were then unloaded at prosecutor's (he being the purchaser) and on the way back to the scales to reweigh the wagons and get the tare weight, appellant threw off the piece of iron from the wagon he was driving, and the wagon was weighed without this piece of iron being on it. A check was made out by the prosecutor to appellant for $91.95, which was the full net weight of the hogs including the weight of the piece of iron. At the rate prosecutor was to pay for the hogs, he paid on account of the piece of iron, the additional sum of $2.70. The State's testimony tended to show that this piece of iron was intentionally thrown off by appellant between the time when the gross weight of the hogs and wagons was taken and the time when the wagons were afterwards weighed. The effect was to swindle prosecutor out of $2.70. Appellant's testimony tended to show that the piece of iron was not thrown off the wagon by him intentionally, but fell off between the time when the gross weight of the hogs and wagons was taken, and when the wagons were subsequently weighed, after the hogs had been unloaded. No question is made as to the character of the false pretenses. The proof here shows no verbal representation, but merely certain acts, which the State contends were of a fraudulent nature, and so calculated to deceive. It has been held that there need be no verbal representation. Blum v. State, 20 Texas Crim. App., 578.

However, it is contended that it does not sufficiently appear from the complaint and information of what amount it was intended to defraud prosecutor. We believe an examination of the information discloses the amount to have been the extra weight of the piece of iron at the price agreed upon for the hogs, which was $2.70. This brought the case properly within the jurisdiction of the court. Gaskins v. State, 38 S. W. Rep., 470; Perry v. State, 39 Texas Crim. Rep., 495. By an inspection of the pleadings, it will be observed that the pleader, after stating in general terms, that prosecutor was swindled out of a check for $91.95, which was of the value of $91.95 (describing it), then proceeds in detail to allege the character of the swindle, and specifically alleges that the said A. J. Speer did then and there by means as aforesaid acquire from said J. C. Newton said check for the sum of money so in excess of the amount of money which had been previously alleged to be $2.70 that he was justly entitled to. It is also claimed that there was no direct allegation in the pleadings that the said Speer intended to appropriate the said excess to his use and benefit. An examination of said pleadings will show that it is directly alleged that appellant made said representations with the intent then and there to appropriate said sum to the use and benefit of the said Speer, in this—then the pleadings in detail specifically allege the method by which the alleged swindle was consummated. It is also claimed that no value is placed upon the excess of $2.70. The value was placed in the pleadings on the entire check, and the said $2.70 is denominated

money in the pleadings. The statute uses money, and money in our statute has a distinctive meaning, significant of value.

Appellant complains that the court should have given his special requested instruction, to acquit defendant on the ground that the evidence did not sustain the allegations in the information. His contention being that the allegations in the information showed that there was no ownership by A. J. Speer of the hogs in question; that the proof showed they were the property of his son, Carl Speer. If there was any fraudulent intent it would under the circumstances in proof inure to his benefit, and there was no allegation in the information that the fraud was intended to impair prosecutor's right in the property, but the allegation was that it was with intent to appropriate the money to his, appellant's, use. The proof in this respect on the part of the State shows that all of the acts complained of were perpetrated by A. J. Speer, defendant, who was the father of Carl Speer, his minor son. The hogs and wagons were in appellant's possession at the time he did the acts complained of. Appellant's proof showed that the hogs belonged to Carl Speer; that he was the minor son of appellant, and was attending school at Waco, but at the particular time in question was at home, and on that day was attending his father's store. His father carried the hogs to town, took the check in his own name, but deposited the proceeds in the name of his son. The son testified that he did not authorize his father to commit any fraud on his behalf. The main question in a case of this character is, the intent to defraud. Of course the intent to appropriate to some one's use is incidental, and the statute uses that language. But after the intent to defraud is once established the law is not particular in ascertaining to whom the benefit is to accrue. Nor does it split hairs in order to determine that fact. Here the excess above the value of the hogs, being $2.70, was the property out of which prosecutor was in fact defrauded. A minor who claims the ownership of the hogs says, he did not participate in the scheme to swindle. And so evidently this intent consummated by defendant, constituted an appropriation by him at the time of the fraud, and although he may have passed the money to some third party afterwards, it would not matter. Trafton v. State, 5 Texas Crim. App., 480; Wright v. State, 35 Texas Crim. Rep., 470.

The exception contained in appellant's bill to the action of the court refusing to instruct the jury to disregard any statements made by Snow White as to what his mother, Mrs. Snow White, may have told him, should have been made to the introduction of the testimony, and not a bill taken to the refusal of the court to instruct the jury in regard to said matter. However, the court gave an instruction, as shown by the bill, which we think sufficiently safeguarded appellant's rights from any possible injury on this account. The court instructed the jury that they could not consider such conversations, the same not being in evidence.

Appellant complains that the court did not give his special requested

instruction with reference to the intentional removal of said piece of iron on the part of appellant, between the weighing of the hogs and wagons, including· the piece of iron, and the subsequent reweighing of the wagons after the piece of iron had been removed. We have examined the charge of the court, and in our opinion, it sufficiently safeguarded appellant's rights. As to his defense on the proposition involved in said requested special instruction, the court instructed the jury as follows: "If you believe from the evidence that the piece of iron in question fell .from the wagon of the defendant without the knowledge of defendant, or that he did not know that the weight of said iron was included in the weight given in the certificate furnished by the weigher, and that same was included by mistake, if you believe same was so included by mistake, and that such mistake, if a mistake, was an honest one on the part of defendant, you will acquit the defendant, or if you have a reasonable doubt as to either of those questions, you will acquit him." We understand the real defense of appellant was that there was no intention to defraud, and that the whole case turned on whether or not the piece of iron accidentally fell off, or was intentionally thrown off of the wagon by appellant between the first weighing of the hogs and wagons and the subsequent weighing of the wagons. The State's evidence shows that it was intentionally thrown off by appellant. Appellant's testimony shows that it accidentally fell off. It occurs to us that the charge in question adequately presents this issue. The previous charge of the court, on which the jury were authorized to convict defendant, sufficiently and properly presented the State's view on this question. We believe that appellant has had a fair and impartial trial, and that the evidence sustains the conviction. The judgment is accordingly affirmed.

*Affirmed.*