LEVY v. INDUSTRIAL FINANCE CORPORATION et al. (two cases).

(Circuit Court of Appeals, Fourth Circuit. January 11, 1927.)

Nos. 2528, 2555.

1. Bankruptcy ⚖➁440—Order denying discharge in bankruptcy prior to 1926 act held reviewable exclusively by appeal (Bankruptcy Act, § 25 [a], being Comp. St. § 9609; Act May 27, 1926 [44 Stat. 662]).

Order denying discharge in bankruptcy *held* reviewable exclusively by appeal, under Bankruptcy Act, § 25 (a), being Comp. St. § 9609, as it existed before its amendment· by Act May 27, 1926 (44 Stat. 662), and not by petition to superintend and revise.

2. Bankruptcy ⚖➁414(3)—Evidence held to show financial statements of corporate bankrupt on which money was loaned were false, to knowledge of bankrupt controlling stockholder.

Evidence *held* to show that bankrupt controlling stockholder knew that financial state-

16 F.(2d)—49

ments and audit of bankrupt corporation's books on which money was loaned to corporation were false, in that they were based on books padded by manipulating inventories and carrying worthless accounts as assets.

3. Bankruptcy ⚖➁415(3)—Special master's report and findings on application for discharge are advisory, and should be disregarded if clearly wrong (Bankruptcy Act, § 14 [b], being Comp. St. § 9598).

Though ordinarily much weight should be given to special master's conclusions on evidence on application for discharge in bankruptcy, his report and findings are merely advisory, and under Bankruptcy Act, § 14 (b), being Comp. St. § 9598, it is District Judge's duty to disregard them if he thinks they are clearly wrong.

4. Bankruptcy ⚖➁407(5)—Bankrupt controlling stockholder, procuring loan for bankrupt corporation on false financial statements, held not entitled to individual discharge; "obtained" (Bankruptcy Act, § 14 [b], being Comp. St. § 9598).

Where money was loaned to corporate bankrupt in reliance on its financial statements known to be false by bankrupt controlling stockholder, who guaranteed its notes, *held*, that he obtained money on credit on materially false statement in writing, within Bankruptcy Act, § 14 (b), being Comp. St. § 9598, and was not entitled to individual discharge; "obtained" not requiring that money be obtained for bankrupt's own use.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Obtain.]

On Petition to Superintend and Revise, in Matter of Law, Proceedings of the District Court of the United States for the Eastern District of Virginia, at Norfolk, in Bankruptcy; D. Lawrence Groner, Judge.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk, in Bankruptcy; D. Lawrence Groner, Judge.

In the matter of the bankruptcy of Harry Levy. Bankrupt's petition for discharge in bankruptcy was denied, and he petitions to superintend and revise in matter of law and appeals. Affirmed. Petition to superintend and revise dismissed.

S. M. Brandt, of Norfolk, Va., and R. M. Lett, of Newport News, Va., for petitioner and appellant.

R. Randolph Hicks, of New York City (Satterlee & Canfield and J. J. Irwin, Jr., all of New York City, on the brief), for respondents and appellees.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

PARKER, Circuit Judge. [1] This is an appeal from, and a petition to superintend and revise in matter of law, an order

of the District Court denying a discharge in bankruptcy. The adjudication of bankruptcy, the order denying the discharge, and the order allowing the appeal, were entered prior to the going into effect of the Act of May 27, 1926 (44 Stat. 662), amending the National Bankruptcy Act, and it is not questioned that the case is governed, both as to the rights of the parties and as to procedure, by the law as it existed prior to the amendment. Appeal under section 25 (a), of the Bankruptcy Act being Comp. St. § 9609, was the proper and exclusive remedy, and the case will therefore be heard upon the appeal, and the petition to superintend and revise will be dismissed. Matter of Loving, 224 U. S. 183, 32 S. Ct. 446, 56 L. Ed. 725; Cook Inlet Coal Fields Co. v. Caldwell (C. C. A. 4th) 147 F. 475; In re Kuffler (C. C. A. 2d) 127 F. 125; In re Mueller (C. C. A. 6th) 135 F. 711; Remington on Bankruptcy (3d Ed.) par. 3707.

The specifications of objections filed by three of bankrupt's principal creditors in opposition to this discharge alleged that he had obtained money from them on credit upon materially false statements in writing. The bankrupt filed answer denying this allegation. The issue thus raised was referred to a special master, who heard the testimony and reported same to the court, together with findings of fact to the effect that objectors had failed to show that the statements relied on were materially false when made, or that bankrupt had knowledge of their falsity or acted otherwise than in good faith. He recommended that the discharge be granted. The trial judge sustained exceptions filed to this report, and denied the petition for discharge. This appeal is from that order, and the position of bankrupt may be stated as resting upon three propositions: (1) That the statements in writing relied upon by objectors were not false to the knowledge of bankrupt at the time they were made; (2) that, granting that there is evidence that the statements were false and fraudulent, it is not so conclusive as to show that the finding of the special master to the contrary was clearly wrong and that the court below should have affirmed his findings; and (3) that, irrespective of the falsity of the statement in writing and the bankrupt's knowledge thereof, the discharge should be granted for the reason that the money obtained went, not to bankrupt, but to a corporation of which he was president. For a proper understanding of these contentions, a brief statement of the facts is necessary.

[2] In 1922, the bankrupt was president of the American Home Furnishers' Corporation, a concern in which he and his sister-in-law owned more than two-thirds of the 30,000 shares of stock and of which he had general management and control. Prior to obtaining the money on the statements in question here, he and his sister-in-law had borrowed $550,000 on their real estate holdings, out of which debts of the corporation had been paid, and this gave him an added interest in keeping it afloat. On September 30, 1922, he obtained a loan of $1,500,000 for the corporation from objectors, upon a series of notes, the payment of which he guaranteed personally. To obtain this loan, he first furnished to objectors a financial statement of the company, and later transmitted to them an audit made by auditors employed by the corporation with their approval. Both the financial statement and the audit were false, in that they showed the assets of the company to be greater than they actually were by a very large amount. They were based on books which had been padded by carrying the same merchandise on two inventories, and by carrying as assets worthless accounts in cases where goods sold had been repossessed for failure to meet payments. In the latter class of cases both the accounts and the repossessed merchandise were carried as assets. It was shown that the padding due to manipulation of inventories amounted to nearly half a million dollars, and that the padding due to the carrying of worthless accounts as assets amounted to a very large sum, making a total overvaluation of approximately $1,000,000 in a business whose assets exceeded its liabilities, exclusive of stock liabilities, by only about $3,000,000.

The padding of the books was discovered in the spring of 1923, when one Schreffler, the assistant treasurer, disclosed the condition of affairs at a meeting of representatives of banks which was being held with a view of refinancing the corporation. Schreffler stated that this padding of the books had existed since prior to the furnishing of the statement and audit upon which the $1,500,000 loan had been made, and evidence was introduced on the hearing sustaining this statement on his part. He also stated that the books had been padded at the direction of the bankrupt; and one Morris, the representative of the objectors who was present at this meeting, testifies positively that, when bankrupt was called into the meeting and confronted with these charges, he admitted them to be true, but pleaded that what he had done had been done, not for personal

profit, but in an effort to save the company. The corporation was placed in bankruptcy some months thereafter, and the bankrupt's guaranty of its notes necessitated his being placed in bankruptcy also; his liability on these notes constituting the principal liability of his estate.

There is practically no question under the evidence that the written statements furnished as the basis for securing the loan for the corporation were materially false and that the objectors relied upon them in making the loan. We are satisfied, also, that they were false to the knowledge of the bankrupt. It is true that he denies knowledge of the padding of the books, and denies making the admission testified to by Morris, and in fairness to him it should be stated that he produced two witnesses who were present at the meeting, and who testified that they did not remember hearing him make the admission. On the other hand, it is certain that the books were padded, and that bankrupt was deeply interested in the corporation and had complete charge of its affairs. No one else, so far as the evidence shows, had any interest in padding the books, and it is inconceivable that they should have been padded as they were without his knowing of it. So far as the admission is concerned, the testimony of Morris is positive and unequivocal, and that of the others, with the exception of the bankrupt, is merely negative. He did not see fit to call either the assistant treasurer, Schreffler, or Schumaker, another official of the corporation, both of whom were present at the time of the alleged admission, and who could have thrown much light upon his knowledge or lack of knowledge of the padding of the books. Their depositions were not taken, nor was their absence accounted for. Under these circumstances, we think that the learned and careful District Judge was clearly right in holding that the statements upon which the "money was obtained on credit" were false to the knowledge of the bankrupt.

[3] It is true that the special master saw and heard the witnesses, and that ordinarily much weight should be given to his conclusions. Baker v. Bishop-Babcock-Becker Co. (C. C. A. 4th) 220 F. 657. But the statute (section 14 [b] of the Bankruptcy Act [Comp. St. § 9598]) makes it the duty of the judge to hear and pass upon bankrupt's application, and the report and findings of the special master are merely advisory. Koch v. Sidney Blumenthal & Co. (C. C. A. 1st) 3 F.(2d) 395; In re Hughes (C. C. A. 2d) 262 F. 500; International Harvester Co. of America v. Carlson (C. C. A. 8th) 217 F. 736. Where, in the opinion of the judge, these are clearly wrong, it is his duty to disregard them.

[4] This brings us to the real question of the case: Is the bankrupt entitled to discharge, notwithstanding the making of the false statements in writing, because the money which was obtained by means thereof was received, not by him, but by the corporation? In passing upon this question it must be remembered that, not only was bankrupt the one who actually obtained the money by means of the false statements, but also that credit was extended to him as well as to the corporation. The principal debt owing by his estate is that which arose out of the obtaining of this money; and, while the money did not go into his estate, it did go into the coffers of a corporation which he controlled, and of which he was one of the principal stockholders.

The statute provides that discharge shall be denied if the bankrupt has "obtained money or property on credit upon a materially false statement in writing, made by him to any person or his representative for the purpose of obtaining credit from such person." It will be seen, therefore, that what the bankrupt did falls literally within the wording of the statute. He obtained "money * * * on credit upon a materially false statement in writing." The statute does not say that he must have obtained the money or property for himself, and we do not think such meaning is implied in the use of the word "obtain." It will be noted that the use of the word in this statute is very similar to its use in statutes against false pretense; and while some of the earliest decisions held that it was necessary for a conviction under the false pretense statutes to show that the accused obtained the property for himself, it is now, and has been for years, the practically universal holding that "the property need not be obtained by accused for himself, it is sufficient if, induced by his false representations, it is delivered to another, either for the benefit of that other or for accused's benefit." 25 C. J. 606; 19 Cyc. 409; Com. v. Langley, 169 Mass. 89, 47 N. E. 511; Com. v. Harley, 7 Metc. (Mass.) 462; Foss v. State, 15 Ga. App. 478, 83 S. E. 880; Sandy v. State, 60 Ala. 58; Fisher v. State, 161 Ark. 586, 256 S. W. 858; People v. Woods, 59 Cal. App. 740, 212 P. 41; Musgrave v. State, 133 Ind. 297, 32 N. E. 885; State v. Balliet, 63 Kan. 707, 66 P. 1005; Speer v. State, 50 Tex. Cr. App. 273, 97 S. W. 469; State v. Mendenhall, 24

Wash. 12, 63 P. 1109. It is reasonable to assume that, in using the word "obtain," Congress had in mind the meaning which the courts had given it in construing other statutes against frauds. And certainly the meaning intended was that which had become settled under the modern decisions, and not that of a few early decisions no longer generally followed. If, therefore, we look merely to the language of the statute, we are satisfied that to bar a discharge it is not necessary that the "money or property" shall have been obtained by the bankrupt for his own use and benefit.

The same result follows if we look to the reason and spirit of the law. As said by Judge Pritchard, speaking for this court, in W. S. Peck Co. v. Lowenbein, 178 F. 178, 181: "It is the evident purpose of the bankruptcy act to protect that unfortunate class of debtors who are unable to pay their debts by giving them a discharge, thus affording them an opportunity to engage in business again, while, on the other hand, it is manifestly intended to deny a discharge to those whose conduct has been such as to show that they obtained credit by false statements calculated and intended to deceive and thereby defraud their creditors." And as said by the Circuit Court of Appeals of the Second Circuit: "A discharge is granted to an honest bankrupt in order that he may reinstate himself in the business world; it is refused to a dishonest bankrupt as a punishment for his fraud and to prevent its continuance in the future." In re Hammerstein (C. C. A.) 189 F. 37. Under the principles stated, we see no reason for making a distinction between cases where the bankrupt has himself received the money obtained by the false statement, and cases where it has been received by a corporation in which he is interested. If the principal debt of his estate is one which he contracted in securing money by means of false and fraudulent statements, there would seem to be as much reason for denying him a discharge in one case as in the other. For the determining factor is manifestly not the fact that the bankrupt has received money, but that he has incurred debts through fraud.

The exact point involved here was before the District Court for the Northern District of New York in the case of In re Aldridge, 168 F. 93. In that case, the bankrupt had obtained property on credit for his brother by the use of false written statements, and had indorsed the notes given by his brother for the property. In denying a discharge, the court said:

"It is, of course, possible to construe subdivision 3 of section 14b of the Bankruptcy Act, as amended [Comp. St. § 9598], to mean that the property must have been obtained by the bankrupt for his own use or benefit, to swell or benefit his own estate, and that the written statement used to obtain such property must have been one made by the bankrupt himself or under his direction, so that the written statement itself was in fact his composition, and his expression made to the person of whom the property is obtained and for the purpose of obtaining it. But the section does not so read, and would not, in my judgment, serve the purpose for which intended should we give it such a narrow and strict construction. * * * The words 'obtained property,' and 'obtaining such property on credit,' do not mean that the property must have been obtained for the use or benefit of the one obtaining it. I think that if a bankrupt has obtained property from another person for a third person, on his own credit (that of the bankrupt), upon a materially false statement in writing made to that 'other person' for that purpose, he is to be denied a discharge. If A., now a bankrupt seeking a discharge, as indorser on a note given by B., as maker, in payment for property obtained from C. for B. by A., is owing C., and C. was induced by A. to part with such property to B. and accept such note relying on A.'s indorsement, and A. at the time of obtaining such property made a materially false statement in writing to C., or the agent who did the business for C., and the property was parted with and the note accepted in reliance on such statement and in the belief that it was true, A. is not entitled to his discharge. The statute quoted was intended to cover such a case, and in my judgment does cover it."

Prior to that decision the point was before the District Court for the Southern District of New York, in the case of In re Dresser & Co., 144 F. 318, in which it appeared that the bankrupt firm, which owned two-thirds of the stock of the American Tubing & Webbing Company, a corporation, had arranged with a broker for the sale of drafts to be drawn by the corporation, and accepted by Dresser & Co. The scheme contemplated that the proceeds of the drafts should be paid by the broker to the corporation, and used by it to the extent required by its financial necessities and the balance be sent to the firm. A false written statement was furnished by the firm to aid in the sale of the

drafts. In denying a discharge, Judge Holt said:

"Even if no part of the proceeds of the sale of the acceptances had been remitted by the American Tubing & Webbing Company to Dresser & Co., the bankrupt Dresser had such an interest in the American Tubing & Webbing Company, as owner of two-thirds of its stock, that he would be held, within all the authorities, to have obtained the money paid to the American Tubing & Webbing Company, even if the theory upon which the bankrupt's counsel based his arguments, that as between the American Tubing & Webbing Company and the banks which bought the paper, the American Tubing & Webbing Company was the sole vendor of presumably business paper, and the brokers, Wheeler & Jones, who negotiated the sale, were the agents of the American Tubing & Webbing Company only, should be substantially admitted. The benefit which the bankrupt would be presumed to have derived from the payment of the money to the corporation, of which he was the principal stockholder, would, I think, have made it a case of his obtaining the money on the credit of the written statement, within the meaning of all the cases construing the statutes creating a criminal or civil responsibility for obtaining money by fraud."

In the case of In re Bleyer (C. C. A. 2d) 215 F. 896, it appeared that bankrupt had obtained money for a corporation of which he was president by false written statements as to its financial condition, upon notes indorsed by him; and discharge was denied on that ground. It is true that it appeared in that case that at least a part of the money obtained was for the use of the bankrupt; but in the case at bar it appears that the money was obtained in an effort to save a corporation owned in large part by bankrupt and his sister-in-law, in which they were so much interested that they had already used for its benefit more than half a million dollars derived from mortgaging their other property. The efforts to save the corporation, it is true, proved unavailing, but at the time the loan was received bankrupt thought it was for his benefit, and it was in fact for his benefit in that it enabled him to keep afloat for a considerable time a corporation in which he was so vitally interested.

It is well settled that a false statement in writing by a member of a partnership, for the purpose of securing money or property on credit for the partnership, is available to prevent the discharge of the partner making the false statement, although it will not prevent the discharge of innocent partners.

Peck v. Lowenbien (C. C. A. 4th) 178 F. 178; Frank v. Michigan Paper Co. (C. C. A. 4th) 179 F. 776, 30 L. R. A. (N. S.) 623; Ragan, Malone & Co. v. Cotton & Preston (C. C. A. 5th) 200 F. 546. It is true that in the case of a corporation there is the fiction of a legal entity, which does not exist in the case of a partnership; but, so far as the merits of the question under discussion here are concerned, there can be no difference in principle between the case of a partner who obtains credit for his firm by false statements and that of the principal stockholder and manager of a corporation who by such statements obtains credit for the corporation and at the same time assumes liability for the debt thus created by indorsing the corporation's paper.

The rule applicable to all such cases is well summarized in Corpus Juris as follows: "It is not necessary that the property should have been obtained for himself or for his benefit, but if it was obtained on his credit as principal or surety, and such credit was induced by his materially false statement in writing made for the purpose, the case is within the statute." 7 C. J. 377.

We have given careful consideration to the case of In re Applebaum (C. C. A. 2d) 11 F.(2d) 685, which seems to give support to the contention of bankrupt; but, while we have great respect for the court which rendered that decision, we cannot follow it. In our opinion, the doctrine there announced would in effect add to the bankruptcy act a provision not contemplated by Congress, and one not in harmony with the reason and spirit of the law. It may not be amiss to note that that was a per curiam decision by a divided court.

As stated in the beginning, we are dealing with the meaning of the Bankruptcy Act prior to its amendment by the Act of May 27, 1926. Whether, under that amendment, false statements as to the financial condition of the corporation, as distinguished from that of the bankrupt himself, would constitute grounds for denying a discharge, or whether false statements as to the financial condition of a corporation in which a large part of bankrupt's estate was invested might not amount to false statements as to his financial condition within the meaning of the act as amended, are questions which we are not called upon to consider in this case. Under the law applicable here, we are satisfied that the order denying the discharge was correct, and same is accordingly affirmed.

Case No. 2528 dismissed.
Case No. 2555 affirmed.