OTIS O. FLEENOR v. THE STATE.

No. 12573. Delivered June 26, 1929.
Rehearing denied December 11, 1929.
Second Motion for Rehearing overruled January 15, 1930.

The opinion states the case.

*Moore & Wilson* of Amarillo, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for swindling; punishment, two years in the penitentiary.

Mr. Underwood was induced by appellant to endorse a note for $880.00 of date January 24, 1928, theretofore made by appellant and his wife to the Motor Supply Corporation. Appellant was president and general manager of said corporation which bought and sold cars at Whitedeer, Carson county, Texas. Underwood and Crume were stockholders in said corporation and lived at Amarillo some forty miles from Whitedeer. On the occasion in question appellant came to Amarillo with several notes claimed to have been taken by him in the course of the conduct of the business of said company for cars sold by it, among others the note in question, which he said represented the proceeds in whole or in part of a Dodge Victory Six Sedan bought by himself and wife from said company. These notes he wished to sell. Mr. Beasley agreed to buy the notes if Underwood and Crume would personally endorse them. Appellant stated to Beasley, Underwood and Crume that he and his wife had bought the Victory Six Sedan referred to from the corporation and had executed the $880.00 note in payment therefor, and had also executed a chattel mortgage upon said car, and further that he purposed keeping said car at the headquarters of the corporation, using it for the dual purpose of private service to himself and wife and as a show car for the company. Relying on appellant's statement Underwood and Crume personally endorsed the $880.00 note, and Beasley bought it from appellant. Later it appears appellant made two small partial payments on this note, after which Underwood and Crume were called upon to pay the balance approximating $700.00, each paying half of said unpaid balance.

It was shown on this trial without contradiction that at the time of the alleged sale, the execution of the note and mortgage, and also at the time of the endorsement of the note by Underwood, neither

appellant nor his wife had such car, nor did the corporation sell same to them. The proof was that appellant, as such manager, bought a Victory Six Dodge Sedan, the motor and engine numbers corresponding to those in said mortgage, early in January, 1928, from Mr. Cullum of Amarillo,—but that on January 18, 1928, two weeks before appellant got Underwood's endorsement afore-said, Mr. Cullum took said car back and gave the corporation credit for it, and that appellant at no time thereafter owned or possessed any such car.

The indictment herein was attacked in a motion to quash, and its invalidity asserted again in a motion in arrest of judgment, on the ground that it did not set out in haec verba the mortgage mentioned. We do not think, under the facts of this case, that it was necessary to so set it out. Said mortgage was substantially referred to and described in the indictment. The note whose endorsement by Und-erwood was the basis of this prosecution, was set out in haec verba. We do not think it was necessary for the State to plead its evi-dence. Proof of the execution of the note, that it was not given in the purchase of any car, that appellant had no such car, had bought none, together with proof that the mortgage substantially described in the indictment had behind it no valid transaction and no car upon which it retained any lien, seems to sufficiently make out the case. Moore v. State, 81 Texas Crim. Rep. 606.

Bill of exceptions No. 1 brings forward objection to the intro-duction of the note, the endorsement of which forms the basis of the charge herein. Appellant claimed there was a variance between the note set out in the indictment and the one offered in testimony, because the latter bore an endorsement other than the one referred to. Same was but the endorsement of the Motor Supply Company by appellant as manager and of appellant personally. Under the facts of this case it was not necessary to set out the endorsement, and there was no variance.

Bill of exceptions No. 2 was taken to the testimony of Mr. Cullum who had gotten from appellant the car for the purchase of which appellant represented that he had given the note in question prior to securing the endorsement of Mr. Underwood thereon. Mr. Cullum swore to the motor and engine numbers of said car and that he had checked said numbers with the invoice of the car. The objection was that he was testifying to these matters solely upon reference to the contents of the invoice and not from personal knowledge. Other parts of the testimony of said witness make plain

that he swore to the correctness of the invoice, and that before taking the witness stand he had checked the numbers on the car with those in the invoice and knew them to be correct. It would make no difference who made the invoice if witness knew from comparison that it was correct.

Bill of exceptions No. 3 was to the introduction of the invoice referred to. There was absolutely no question raised on this trial of the fact that appellant had gotten the car in question prior to the time that he let it go to Mr. Cullum, and prior to the time that he induced Mr. Underwood to endorse said note in order that he might negotiate same; and that also he did not have the car in question in his possession, or in the possession of the Motor Supply Company at the time he secured said endorsement. In view of these facts the objections presented in bill of exceptions No. 3 seem trivial.

If we understand bill of exceptions No. 4, it complains of remarks of the court made during the taking of testimony. Witness Underwood said that he signed the other notes, thinking in each instance same were secured. Some objection was made to this testimony, and the court asked if witness had said he was not secured. Appellant's counsel assured the court that the matter was not harmful. The court thereupon told the jury if witness said he was not secured as to the other notes, they could not consider such statement for any purpose. Appellant's counsel again said the matter was immaterial. The court said he did not know whether it was material or not, but that such part as he had referred to was inadmissible, whereupon appellant took a bill of exceptions. We are of opinion that no error is shown by such bill.

Complaint is made in bills of exception Nos. 5 and 6 of argument of State's counsel. Bill No. 5 is qualified so as to make it doubtful whether the argument was in response to that of appellant's counsel or not. We think the argument was improper, but the trial court instructed the jury not to consider it, and the evidence of guilt in this case being plain and conclusive, and the verdict only fixing the minimum penalty, we would not incline to the view that the argument referred to could have influenced the verdict. We have often held that where there could be but one conclusion reached under the law and facts in a particular case, and the jury had inflicted the lowest penalty, we would not reverse for erroneous argument. What we have just said applies with equal force to the complaint in bill of exceptions No. 6.

We have examined each of the five refused special charges. We find no facts in the record calling for the submission of the issue contained in requested instruction No. 5, and the others seem not to present correct legal propositions.

The charge was excepted to for failure to give affirmative instructions regarding the defensive theory. In as much as the accused introduced no testimony, it seems not unlikely the trial court was unable to determine what, if any, was the defensive theory. Special charge No. 6, which was given, may have been deemed sufficient to meet this exception.

We think the testimony ample to support the judgment. Nothing can be plainer than that on February 4, 1928, appellant had no Victory Six Sedan, and that hence his executed note for such car was a fraud. All witnesses swear that on the occasion of the endorsement of said note by Underwood, appellant said he had the car in his possession,—that he and his wife had bought it from the company, and that the note and mortgage referred to had been executed by them for same. No one questioned the fact that by reason of such endorsement Underwood was defrauded, and thereafter had to pay several hundred dollars. Baker v. State, 14 Texas Crim. App. 332; La Moyne v. State, 53 Texas Crim. Rep. 225.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant predicates his motion in part on a renewed claim that our original opinion is erroneous in some particulars; believing the questions discussed have been properly decided we see no reason to again review them. The burdens resting upon this court are already so demanding on the time at our disposal that we deem it impractical to write at length on rehearings where views already expressed are adhered to.

Appellant calls attention to the fact that one ground upon which the indictment was attacked by motion in arrest of judgment was not adverted to in our original opinion. The point made is that the averments of the indictment disclose that Underwood, by fraudulent representations of appellant, was induced to become an "accomodation endorser" on the note for $880.00 which was falsely represented to have been made by appellant and his wife payable to the

Motor Supply Corporation in payment for an automobile; that as an "accommodation endorser" Underwood incurred no liability as long as the note was in the hands of the payee, but under the express provision of the civil statute (R. C. S., Art. 5936, Sub-division 3 of Sec. 64) he only became liable to subsequent parties.; by reason of this appellant claims that the indictment is fatally defective in failing to allege that the note was transferred to a third party after Underwood's endorsement thereon was obtained.

The contention seemed plausible, and challenged our attention, but after mature consideration we have concluded it cannot be sustained. If the note which Underwood was induced to endorse represented a bona fide transaction appellant's position might be stronger, although we regard its soundness even under those circumstances as open to grave doubt. As was said by Judge Henderson writing in Speer v. State, 50 Tex. Cr. R. 273:

"The main question in a case of this character is *the intent to defraud*. Of course the intent to appropriate to some one's use is incidental, and the statute uses that language. But after the intent to defraud is once established the law is not particular in ascertaining to whom the benefit is to accrue; nor does it split hairs in order to determine that fact."

The "intent to appropriate" is not indispensable, the fraud may consist in "impairing the right of the party" upon whom the fraud is practiced. (See the definition of swindling, Art. 1545, P. C.) In determining the sufficiency of the indictment, or in appraising the facts relied upon to sustain it, Art. 1548, P. C., may not be overlooked. It reads as follows:

"It is not necessary in order to constitute the offense of swindling, that any benefit shall accrue to the person guilty of the fraud or deceit, nor that any injury shall result to the person intended to be defrauded, if it is sufficiently apparent that there was a wilful design to receive benefit or cause an injury."

The indictment avers that appellant advised Underwood if he would endorse the note in question that appellant "could and would negotiate same." After the endorsement was placed on the note it immediately became possible for an injury to result to Underwood, and the averments of the indictment taken altogether make it sufficiently apparent that there was a wilful design on the part of appellant "to receive benefit (to himself) or cause an injury" to Underwood by reason of said endorsement. In Baxter v. State, 51 Tex. Cr. R. 576, accused with another executed a note to a bank,

and made false representations by which they received from the bank $1,000.00. It was insisted that the indictment was defective for failing to allege that the note had not been paid. This court said:

"This is not a necessary allegation in an indictment for swindling since Art. 946 (now 1548) provides that it is not necessary in order to constitute the offense that any benefit accrue to the party guilty of the fraud or deceit, or injury to the person intended to be defrauded."

In the present indictment the intent to injure and defraud is alleged, and sufficient averments are incorporated to show that Underwood was induced to do a thing which put it within the power of appellant to consummate the injury. Proof of the fact that appellant did transfer the note to a third party simply evidenced the continuance of a fraudulent intent, and the consummation of such intent which is averred to have been entertained by appellant when the deceit was practiced. In Corpus Juris, Vol. 25, page 606, is found the following general statement applicable here:

"The property obtained (in the present case the endorsement of the note) must be such that the deprivation of it may, by possibility at least, be a cause of loss to the prosecutor."

The averments of the present indictment are in our opinion sufficient.

The motion for rehearing is overruled.

*Overruled.*

## ON SECOND MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In a second motion for rehearing, appellant, through his counsel, advances the contention (not heretofore discussed) that there was no averment in the indictment of the value of the indorsement of the note and that in the absence of such averment there was no basis for the jury to determine whether the offense was a felony or a misdemeanor. In the indictment it is averred as follows:

"  .  .  .  the said P. R. Underwood relying upon said false and fraudulent pretenses and representations and believing them to be true, was induced to and did endorse and place his signature upon said above described note, said note above described being an instrument of writing, conveying and securing a valuable right, of the value

of $880.20, with intent on the part of him, the said Otis O. Fleenor, and with the willful design to cause an injury to him, the said P. R. Underwood, and to destroy and impair the right of the said P. R. Underwood, as endorser on said note."

The statement of the value of the note as above quoted and the connection in which it appears are deemed sufficient averments of the value of the indorsement. An inquiry into the solvency or insolvency of Underwood would not be a pertinent inquiry. Neither the benefit to the accused nor injury to Underwood was an essential element of the transaction. P. C., Art. 1548. Evidence, however, was received upon the trial showing that the transfer of the note was contemplated at the time of the indorsement and consummated before the maturity of the note, which was subsequently paid by Underwood. The facts before the court in the case of Luce v. State, 88 Tex. Cr. R. 46, distinguish it from the present appeal. While the Luce case and the authorities there cited are precedents for the proposition that an indictment for swindling based upon the acquisition of a written instrument should embrace an averment of the value of the instrument, the facts in that case are not wholly analogous to the present one. In the instant case there is an averment in the indictment of the value of the note in question. As the averment appears in the indictment, it is deemed susceptible of the construction that by the value stated is meant the value after indorsement. It was the note *after* the indorsement that the appellant received. The note with the indorsement inured to the benefit of the accused, and the delivery of the note with the indorsement thereon to the accused caused the injury to Underwood. From the averment of the indictment it is manifest that the value of the note before indorsement was minimized by the averred fact that the represented lien securing the note did not exist. The specific matter now presented, namely, that there was no averment in terms that the value ascribed to the note was perforce the indorsement, was not addressed to the court until after verdict. The jury, in the court's charge, were told that to warant the conviction of a felony the false representation must have been with intent to acquire by the accused a benefit amounting to fifty dollars or more, or to injure Underwood to that extent. The acquiescence in the charge so framed give substance to the idea that the value of $880.20 placed upon the note by the evidence was a statement of the value after the indorsement, as construed at the time of the trial. The following quotation from the

case of Horton v. The State, 109 Ga. Rep. 131, is of interest as bearing upon the principle involved in the present inquiry:

"In the case of State v. Thatcher, 6 Vroom (N. J.) 445, Van Syckel, J., in discussing what property must be obtained in order to constitute the offense, said: 'Is the maker's own note or contract of suretyship a valuable thing? The signing of the name was an act— the name when signed was a thing. Was it a thing of any value? While it remained locked up in his secretary, it was of no value to the maker, but *eo instanti* it passed out of his hands by the fraud, it became impressed with the qualities of commercial paper, and possessed to him the value which it might cost to redeem it from a bona fide holder. . . . Can it, therefore, be said that a paper which imposed such a risk was of no value to the maker? Its value to him consisted, not in what it would put in his pocket if he retained it, but in what might be taken out of his purse by the delivery of it to the defendant'."

As the record appears here, the opinion is held and expressed that the trial court was warranted in overruling the appellant's motion in arrest of judgment.

For the reasons stated, the second motion for rehearing is denied.

*Denied.*